### CAMDEN INTERSTATE RY. CO. v. BROOM.

(Circuit Court of Appeals, Sixth Circuit. July 21, 1905.)

#### No. 1,409.

STREET RAILROADS—INJURY OF CHILD AT CROSSING—NEGLIGENCE OF MOTORMAN.

A motorman operating a street car on approaching a crossing where a number of children are congregated or passing across the tracks is bound to know that they may not exercise the care of older persons, and to take special precautions accordingly to avoid their injury; and where in such case a child was run over and injured, and there was evidence of a substantial character tending to show that the car approached the crossing at a speed of 10 or 15 miles an hour, without giving any warning of its approach, although such evidence was contradicted, a verdict finding that the company was chargeable with negligence will not be disturbed.

[Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Street Railroads, § 202.]

In Error to the Circuit Court of the United States for the Southern District of Ohio.

A. R. Johnson, for plaintiff in error.

R. B. Miller and W. D. James, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

RICHARDS, Circuit Judge. On December 5, 1902, the plaintiff below, Edward Broom, a boy six years old, was run over by one of the defendant company's cars, and lost a leg. The accident occurred in the morning, at or near a street crossing in Ironton, Ohio, while the boy, in company with other children, was on his way to school. He brought this suit by his next friend, claiming the company was liable, because the brakes on the car were out of order (one set being off and the other not working properly), so it could not be stopped quick enough to avoid striking him, and because, in view of the presence of the children at and near the crossing, the motorman did not use the necessary precautions in approaching it, running at too high a rate of speed, without keeping a proper lookout and giving warning by bell or gong of his approach. The company defended on the ground that the car was properly equipped with brakes, and that the accident was inevitable, not being attributable either to the condition of the car or the action of the motorman in operating it, but solely to the conduct of the boy in suddenly and unexpectedly running from the sidewalk in front of or against the car. A motion for peremptory instructions in favor of the defendant having been denied, there was a verdict and judgment for $10,000, which the court declined to disturb.

It is very earnestly argued that no case for recovery was shown in the testimony, and that, if there was, the court erred in its rulings during the trial. The accident took place on Elm street, at or near the east side of its intersection with Third street, at about half past 8 o'clock in the morning, when the children of the neighborhood were on their way to the public school, located on the east side of Third street, about half a block north of Elm. The street railway of the defendant company runs south on Second street to Elm, then east on Elm to a point between Fourth and Fifth, where it crosses a bridge over Storms creek. The car which caused the injury was an interurban one, 38 feet long, and weighing 20 tons. It was in charge of Motorman Willis, who had been operating cars over the route for about four months, knew the location of the schoolhouse, that the school was in session, and was familiar with the habits of the children in going to and coming from school. On this day the car stopped after it had rounded the curve from Second into Elm, to take on a passenger, and then started out Elm towards the crossing on the east side of Third, about 300 feet distant, and in plain view. At this time a number of school children were collected at the intersection of Third and Elm on or near the southeast corner. There was a fire hydrant on this corner, and near it a pool of muddy water. The sidewalk was not paved,

nor was the crossing over Elm. The situation at that corner was thus described by one of the defendant's witnesses:

"I was standing at the water plug that is right at the corner there, and the children were all gathered around there, getting ready to go to school. The first bell was ringing for school. The boys were splashing water on the girls —the little girls—as they came along, and I saw the car coming."

The little Broom boy was at or near this corner as the car came east on Elm. He was on his way to school. To get there he had to cross Elm, which was about 30 feet wide; so it was only about 12 feet from the outer edge of the sidewalk (there was no curb there) to the nearest rail.

All of the above facts are practically undisputed. As to what occurred at the precise time of the accident there is a conflict in the testimony. The testimony of the defendant tended to show that the car was coming out Elm street at its usual rate of speed (the motorman said five or six miles an hour); that the brakes were in perfect condition; that the motorman was keeping a proper lookout; that no one was on or near the track as the car neared the crossing on the east side of Third street, when suddenly and unexpectedly the little Broom boy started from the sidewalk on the south side of Elm near the corner, and, running rapidly and in a diagonal direction across Elm street, with his face away from the approaching car, ran either directly in front or against the side of the car so quickly that it was impossible for the motorman to stop the car in time to prevent the accident. As soon as the motorman saw the boy, he applied the brakes and stopped the car, but meanwhile it had run over the boy, who was picked up under the rear platform. If this were all the testimony in the case, it might well be said that no ground of recovery was shown (Chilton v. Central Traction Co., 152 Pa. 425, 25 Atl. 606; Fleishman v. Neversink Mt. Ry. Co., 174 Pa. 510, 34 Atl. 119; Booth on Street Railways, § 310); but the testimony of the plaintiff (and it was of a substantial character) tended to prove that although, from the number of children on or near the Third street crossing in plain view of the motorman as he started out Elm, he should have anticipated some one of them might attempt to cross the track in front of his car, and therefore was bound to take precautions to avoid injuring him, holding the car under control, keeping a keen lookout, not only ahead, but on both sides, and sounding a warning of his approach, nevertheless the car was run out Elm at a speed of from 10 to 15 miles an hour, and took the crossing without slackening its speed or giving any warning whatever of its approach; that as the car approached Third, the witness, Calvin Frowine, a school boy about 14 years old, was crossing Elm on a diagonal course, starting from the southwest corner of Third and Elm. He was on the crossing and close to the track when, happening to see the car coming, he stepped back from the track, and it went on. Meantime the little Broom boy, who was on the southeast corner, started to cross Elm street, passing to the left of the mudhole, and then running diagonally toward the track. He passed the Frownie boy about two feet to his right, with his face turned

away from the approaching car, and, stepping upon the track in front of it, was struck and run over. If the jury believed this testimony; if it reached the conclusion that, had the motorman taken proper precautions, he would have had the car under control, and warned the child, and avoided the accident—it was justified in finding for the plaintiff. The duty of a motorman approaching a crossing is well established. He may not rely upon an exclusive right to use the street. Those on foot have rights too. He is bound to keep a vigilant lookout, give warning of his approach, and so regulate the speed of his car as to avoid injuring those using the crossing. Cinti. St. Ry. Co. v. Snell, 54 Ohio St. 197, 43 N. E. 207, 32 L. R. A. 276. As at crossings, so in the case of children, special precautions are demanded. "Children, wherever they go, must be expected to act upon childish instincts and impulses; and others, who are chargeable with the duty of care and caution towards them, must calculate upon this, and take precautions accordingly." Union Pac. Ry. Co. v. McDonald, 152 U. S. 262, 277, 14 Sup. Ct. 619, 625, 38 L. Ed. 434, quoting Judge Cooley in Powers v. Harlow, 53 Mich. 507, 514, 19 N. W. 257, 51 Am. Rep. 154. To a certain extent the care which is not required of children incapable of contributory negligence must be exercised towards them by those operating dangerous machines.

In thus stating the tendency of plaintiff's testimony, we have taken the view favorable to his side. We are bound to do this. The jury had a right to take this view, and we have no power to set the verdict aside because we may entertain a different one. This was not the case of an absence, but of a conflict, of testimony. Upon nearly every point of importance there were witnesses on one side and the other. The case was therefore clearly one for the jury. Although we may disagree with its conclusions, and regard its assessment as excessive, we cannot, on that account, reverse the judgment based upon its verdict. As we said recently in the case of Minahan v. Grand Trunk Ry. (C. C. A., decided June 6, 1905) 138 Fed. 37, in which we attempted to mark out the respective provinces of the court and jury in these cases:

"The court cannot balance the evidence when it is conflicting, and then compel the jury to find a verdict according to the court's estimate of the relative weight of the evidence for the respective parties. Such a doctrine would efface the line of demarcation between the provinces of the court and jury."

2. We have not discussed the question of the condition of the brakes, as shown by the testimony, because upon the trial this point apparently dropped out of sight; but it is now submitted there was error in the charge upon the subject; that the court told the jury that, if there was "any evidence tending to show that the failure to stop the car was due to the inefficient brakes, or the absence of brakes, then that would be ground for recovery." It is insisted this was going too far; that it is not sufficient if there be evidence merely "tending to show"; there must be evidence showing the thing to the satisfaction of the jury. This is quite true, but the court, both before and after using the language ob-

jected to, said as much to the jury. The jury was not, in our opinion, misled.

3. It is further submitted that the court erred in its charge in assuming that the accident took place at a street crossing. The petition alleged that the injury took place at a street crossing. The answer denied generally. The testimony was conflicting. The court gave the jury the law with respect to street crossings. Undoubtedly the accident took place at or near a street crossing. In presenting the claim of the plaintiff, the court apparently assumed that the accident took place at a crossing, but the court qualified this assumption by saying:

"I am not undertaking to say what the evidence is. I am stating to you the plaintiff's claim, and it is for you to determine from the evidence what the situation presented to the motorman was."

But, if the charge contained an assumption that the accident took place at a crossing, so as to mislead the jury and prejudice the defendant, the attention of the court should have been called to the matter at the time, so that it might have been corrected.

4. The defendant presented 19 special charges, which were refused on the ground that most of them were covered by the charge given, and the rest inapplicable. We have gone over them carefully, and are unable to see how the defendant was prejudiced by their rejection. The charge as given covered the case and presented the issues, with the law, fairly to the jury. The claim of the defendant is thus described:

"If he was exercising due prudence and care—ordinary prudence and care, all that the situation required of him—and the boy unexpectedly ran in front of the car, then the company would not be liable, for that would not be the fault of the motorman. That might happen. A car might be moving at a slow rate of speed absolutely within the control of the motorman, due warning might be given, all reasonable precautions might be taken to avoid injuring people who might be using the crossing, and a thoughtless boy suddenly get upon the track in front of the car, when it would be impossible to stop it in time to save him, and be injured; but in such a case the motorman would not be negligent, and the company would not be responsible for the injury."

A number of these requests are based upon the theory that if the boy suddenly and unexpectedly ran from the sidewalk into Elm street against the car or in front of it, and so was injured, then the verdict must be for the defendant. This is to disregard wholly the duty of the motorman. In the case of small children at or near a crossing, a motorman may anticipate that a boy six years old is liable to run out into the street against or in front of the car. He is bound to be on the lookout for that sort of thing, and take proper precautions to guard against an accident resulting from it.

These, we think, are the only points that require discussion. There was no prejudicial error in the rulings respecting the admission or rejection of testimony.

The judgment is affirmed.