CARTWRIGHT *et al. v.* GRAVES (two cases).

(*Nashville,* December Term, 1944.)

Opinion filed December 2, 1944.

116

JOHN C. GOINS and L. H. GAMMON, both of Chattanooga, for defendants, plaintiffs in error.

H. D. KERR, JAMES L. WOLFE, and W. T. FINNELL, all of Cleveland, and ERMA G. GREENWOOD, R. R. KRAMER, and POORE, KRAMER & OVERTON, all of Knoxville for plaintiffs, defendants in error.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

These are two consolidated actions brought to recover damages for injuries to Joyce Graves, a child just under six years of age. The Court of Appeals affirmed judgments awarding to the child $4,000 and to her father, J. H. Graves, $1,000. This Court granted *certiorari*.

We are called upon to declare the measure of care which the law exacts of the driver of a school bus for the safety of young children entrusted to him for transportation. The use of these busses for such purposes is a custom of relatively recent origin. The rapid spread of the custom and incidental multiplication of accidents render the question presently of much public interest.

Petitioner is the owner and operator of a school bus under contract with the County to carry children along a given route to and from school. The child, Joyce, was seriously injured when, just after alighting from this bus, she collided with a large lumber truck, which met and was passing the bus on its left, at a point on the highway where the bus had been stopped to permit the child to alight. She was running from the bus door around

the rear of the bus en route to her home located on the opposite side of the highway.

The negligence with which the bus driver is charged is his failure to exercise due care in discharging this child, with notice that this truck was approaching and with notice that the route of the child upon alighting would be around the bus and into the pathway of the oncoming truck.

The specific insistence appears to be that, plainly aware of the approach of the truck and of the usual and necessary route of the child to reach its home, the driver, failing to exercise that degree of care for this small child's safety which the law exacts of him, (1) opened the bus door and invited the child to alight, and (2) did not notify or warn the child of the plainly impending danger, of which she was, quite apparently, unaware.

The trial Judge refused to direct a verdict and the Court of Appeals concurred in the opinion that the facts and clearly established circumstances presented a question for determination by the jury as to whether or not the driver was negligent in failing to exercise that high degree of care for the safety of this small passenger entrusted to his care which the law exacts.

 In recognition of an assumed obligation of protective care for the immature school passengers which the bus operator undertakes to transport from and to school, it appears that ingress and egress to and from the bus by the children is controlled by the driver by means of a side door, opened and closed by him at his will and discretion. This is a practice adopted and followed manifestly for the protection of these immature passengers. This opening of these doors is, therefore, a positive invitation to the child whose home has been reached to

alight and an implied assurance that the time is right and the way is safe.

In apparent appreciation of the significance of this situation and obligation, counsel for the defendant, when moving for a directed verdict, made this specific statement of the negligence charged and the evidence:

"The defendant renews the same motion made at the conclusion of plaintiff's·proof for a directed verdict, on general grounds. But I want to point out this additional fact, that the ground of negligence alleged and charged in the declaration is permitting this minor plaintiff to get out of the bus when he knew or should have known that the truck was approaching from the opposite direction. There is absolutely not one bit of proof in regard to this truck approaching this school bus when that door was opened and when this minor plaintiff got out on the shoulder of the road."

While we do not understand counsel to thus concede liability even if the proof establishes this charge, little argument has been, or could be, offered against the liability of a bus driver for some degree of negligence who, seeing this oncoming truck and well knowing that the path of the child led across the highway down which this truck was speeding, threw open his bus door and invited, if not directed the child to alight.

The respondent here, plaintiff below, insists, (1), a proposition of fact, that the evidence shows that the driver of this bus opened its door for this small child to alight when he saw, or in the exercise of due care should have seen, this oncoming truck; and that (2), a proposition of law, such conduct was in disregard of his legal and moral obligation and is actionable negligence. And, further, that even should the proof fail to establish this proposition of fact, the admitted failure of the driver to

warn this child as it alighted from the bus was an actionable omission of a plain duty.

■ Considering, first, the question whether or not there is material evidence that the driver saw, or should have seen, the approaching truck before discharging the child, we find that Mrs. Pierce, the only witness not on the bus who saw the accident, testifies that she was standing at a point near the highway, in plain view of the scene, and saw the bus stop, the door opened and this child alight, run around the rear of the bus and collide with the truck. She was standing in the rear of the bus and when it stopped plainly saw the oncoming truck, then some distance up the highway. We quote her testimony:

"Q. When you first saw this bus, or saw it stop, state where was this truck that struck the little girl, when the bus first stopped? A. Well, on up somewhere close to where Mr. Harvey lives.

"Q. Was it at a place where the driver of the school bus could have seen it? A. Yes, sir.

"Q. When he drove up there? A. Yes, sir.

"Q. The truck was not far distant, and the driver of the bus could have seen it if he had been looking?

"Mr. Goins: She don't know whether he could have seen it or not, we object.

"A. It could have been seen easily.

"Q. (Mr. Kerr) Now, after that truck that was meeting this school bus was at a place where the driver could have seen it, did the driver or not open the door and let this child off? A. He opened the door just as the school bus stopped.

"Q. How far away did you say you were? A. I guess I was something like three hundred feet."

The driver, defendant Cartwright, says he had opened

the door before he saw the truck approaching. We quote him:

"Q. When did you first notice this truck you were meeting? A. It was coming over a little rise up there.

"Q. Coming down grade? A. Yes, sir.

"Q. Had you stopped at that time? A. Yes, sir.

"Q. Did you have your arm extended? A. Yes, sir.

"Q. How far had you gone toward allowing the children to get off your bus when you first noticed the oncoming truck, had you opened the door or were they still in the bus? A. I opened the door when I stopped, and looked up the road and saw the truck coming down.

"Q. How fast was it coming? A. It was running twenty-five or thirty miles an hour.

"Q. Do you know how far that was away? A. Something around a quarter of a mile, about three hundred yards, I guess.

"Q. Was it a large truck? A. It was a ton and one-half truck.

"Q. Who got off the bus first when you opened the door? A. The little one.

"Q. She got off first? A. Yes sir.

"Q. State whether or not she was off or on, or in the act of getting off, or where was she, when you first saw the truck? A. She was off when I saw the truck.

"Q. She had gotten off? A. Yes, sir.

"Q. Where were the other two children? A. They were getting out, as quick as the little one got out the others got off."

Ruth, sister of Joyce, who was twelve years old when she testified, was on the bus and, when the bus stopped, saw the truck "up on the hill some distance away, coming pretty fast." She said Mr. Cartwright opened the door and Joyce got out first and ran around the end of

the bus. She got out next. Mr. Cartwright said nothing to either of them.

Enough has been said to show that there is material evidence that Cartwright saw, as and when he stopped his bus and opened the door, this oncoming truck, just as these witnesses did. He was in the best position to see it, and his duty as a driver exacted an obligation to look ahead before he opened the door. And if, as he testifies, he did not in fact see it until he had thrown the door open, even then it was not too late for him to restrain the children until this manifest danger had passed. It is plausibly insisted that, seeing this little child alighting ahead of her sister Ruth and another sister eight years old, who followed her out of the bus, his obligation of care of this small passenger demanded that he at least speak a word of warning and caution to her of an imminent danger which he plainly saw and which she did not, knowing, as he did, the course she would certainly go toward her home across the road. It would seem that common sense and ordinary consideration for the child's safety demanded at least this much.

The situation presents a case of interlocking and continuing legal obligation, first to restrain the child from alighting, and second to warn it. And there is material evidence of neglect in both regards.

Petitioner argues (1) that his obligation went no further than to unload his school passengers in a safe place, and that this he did, on the shoulder of the highway opposite their home, out of the pathway of traffic, that here his obligation of supervision and care ended, invoking the general rule ordinarily applicable to adults; (2) that he had a right to assume that the truck meeting his bus, plainly marked with signs showing its character, would obey the statutory requirement that it come to a

stop; (3) he invokes the doctrine of intervening cause, asserting that the proximate negligence resulting in the injury was that of the driver of the truck, and the proximate cause of the accident was the independent action of the child in running into the truck; and (4) he says that, while no contributory negligence can be imputed to this young child, it was accompanied by two older children, whose responsibility she was, rather than his. It is also insisted that the Courts below erred in holding petitioner to a high degree of care, rather than ordinary care; and complaint is made of certain alleged errors in the charge. Also, it is complained that the verdicts are excessive.

In support of his contention that the obligation of the bus driver ended with his landing of the child in a safe place, that he was not required to escort the child across the highway, petitioner relies strongly on *Gholston* v. *Richards*, 179 Tenn. 645, 169 S. W. (2d) 846, as conclusive in his favor. It is true that it was said in that case where an eleven year old girl was struck by a car while crossing the highway after leaving a school bus, that the driver "discharged the child in a safe place. He could not be expected to escort her over the road. She was an intelligent child, eleven years of age, and she testified she had been riding this bus and getting off at this place for two years and she knew she had to be cautious and look both ways before crossing the highway." That case is clearly distinguishable on its facts from the instant case in several material respects. The duties here alleged to have been neglected do not include any obligation on the driver to leave his bus and escort a child across the highway. No claim is asserted that so impracticable a course must be pursued by the driver. The chief ground of negligence charged in that case, wholly unlike that charged here, was the violation of statutory provisions requiring that

school busses be stopped "as close to the curb or edge of the road as is practicable," etc. This Court found no violation of these statutes and no common law negligence.

The Court did not pass on the question of obligation, if any, of the driver arising from his knowledge of the approach of the car which struck the child. On this question the Court, in concluding the opinion, said:

"It appears from his testimony that the bus driver saw the car which struck the little girl as it was approaching and something is said in the opinion of the Court of Appeals about his failure to warn the child of the oncoming car. Whether any duty rested upon him in this respect, in view of the little girl's testimony, as to the duty resting upon her to keep a lookout before attempting to cross the road, we need not inquire. No such ground of negligence is alleged against the bus driver in the declaration."

Not only did the Court thus expressly disclaim passing on the obligation of the driver to warn, because not a ground of negligence alleged, but expressed doubt that "any duty rested upon him . . . in view of the little girl's testimony, as to the duty resting upon her to keep a lookout before attempting to cross the road."

Obviously, this opinion affords no support for the contention that no duty to warn rested on the driver in the instant case when the child was not eleven, but not quite six years old—a wholly irresponsible age.

Petitioner cites some six cases from other jurisdictions, but in two of these cases the injured party was fourteen years of age, in one thirteen years of age, and not a school bus passenger, a distinction hereinafter pointed out. The maturer ages sufficiently distinguish these four cases, and they otherwise differ on their facts from the instant case. Running thru all the opinions dealing with this

class of cases is recognition of these two distinctive elements affecting liability, (1) the age and capacity for self protection of the passenger, and (2) the special relationship and responsibility of drivers of school busses carrying young children.

One of the cases relied on is *Stuckwish* v. *Hagan*, 316 Pa. 513, 175 A. 381, 382. The child who was injured while crossing the highway after alighting from a school bus, was eight years of age, but the Court found that, "before opening the door, he (the bus driver) looked ahead to the top of the hill 550 feet away, and, seeing that no traffic was approaching opened the door and allowed the children to step off"; that it was not until he had started his bus that he saw the car approaching that later struck the plaintiff. Moreover, this girl plaintiff was accompanied by a sixteen year old brother. Denying that the driver was guilty of negligence, because the evidence showed "that no other traffic came into view within reasonable distance of the bus, until after the children had alighted and it had started on its way," the Court said that this fact distinguishes the case from those relied on by the appellants and cites a number of cases, mentioned later in this opinion, in which the driver was held for neglect in failing to extend his care for the safety of his child passenger to guidance or warning as it crossed the highway.

It is clear that this decision of the Supreme Court of Pennsylvania not only does not sustain petitioner's insistence, but by the plainest implication recognizes liability when the facts are as they appear in the instant case.

Another case relied on is *White* v. *Chappell*, 219 N. C. 652, 14 S. E. (2d) 843, 851. An eight year old boy was struck by a passing car as he crossed the highway after

alighting from a street bus. The boy was riding with and in charge of his mother. In denying recovery the Court said that ''the employees of the Bus Corporation had the right to presume and to act upon the presumption that he was acting with the approval of his mother.'' In such circumstances the Court correctly absolved the bus employees from responsibility for his care in leaving the bus. Moreover, this was not a school bus, but an ordinary common carrier.

The other case cited by petitioner is *Roden* v. *Connecticut Co.*, 113 Conn. 408, 155 A. 721, 722. Counsel quote therefrom a statement of the general rule to the effect that when the carrier has landed a passenger in a safe place it has discharged its duty to him. This, again, was not a school bus and the rule appears to extend responsibility for the child's safety further in these cases where the child is delivered to the bus driver subject to an implied undertaking for its safety. But in that case the Connecticut Court held the carrier negligent in landing the child where he must cross the highway to his home, at a time when a truck and car were rapidly approaching, of which the child did not know. We quote this pertinent passage from this opinion: ''The driver of the bus *gave no warning* to the plaintiff as he alighted, and so far as appears took no precaution to see if any vehicles were approaching.'' (Italics ours.) This is just what is complained of in the instant case. Moreover, in that case, as in nearly all of this class of cases, it was said that the question of whether or not care had been exercised proportionate to the particular conditions and commensurate with the age of the passenger, was one for the jury.

Looking now to the line of authorities relied on by respondent here to sustain the holding of the Courts below, we find cases cited from the Courts of Ohio, Washing-

ton, California, Texas, New Mexico, Florida, Kentucky and Georgia.

Through all of these cases recognizing liability for neglect of care of the safety of child passengers after alighting from the vehicle run recognition of these controlling principles:

█ 1. That the age of the child and his consequent ability or lack of ability to look after his own safety after alighting from the bus is, as declared by the Court of Appeals, "the dominant factor." The generally determinative influence of this factor has nowhere been more strongly expressed than by Justice Green in our case of *Townsley* v. *Yellow Cab Co.*, 145 Tenn. 91, 237 S. W. 58. We quote (145 Tenn. at page 93, 237 S. W. at page 58):

"Years ago, in *Whirley* v. *Whiteman*, 1 Head [610], 38 Tenn. 610, this court expressly approved *Robinson* v. *Cone*, 22 Vt. 213, 54 Am. Dec. 67, to the effect that children of tender years are entitled to a degree of care from others proportioned to their inability to foresee and avoid the perils which they may encounter, and holding that— 'What would be but ordinary neglect, in regard to one whom the defendant supposed a person of full age and capacity, would be gross neglect as to a child, or one known to be incapable of escaping danger.'

"Such is the general rule. 20 R. C. L. 37.; 29 Cyc. 429. A statement of an Ohio court in this connection is frequently quoted:

" 'Children, wherever they go, must be expected to act upon childish instincts and impulses; and others who are chargeable with a duty of care and caution towards them, must calculate upon this, and take precaution accordingly.' *Ficker* v. *Cleveland, etc., R. Co.*, 7 Ohio N. P. 600.

"This language has been adopted by the United States Circuit Court of Appeals for this circuit in *Camden [Interstate Ry. Co.]* v. *Broom,* 139 F. 595, 71 C. C. A. 641, in *Deputy* v. *Kimmell,* 73 W. Va. 595, 80 S. E. 919, L. R. A. (N. S.), 989, Ann. Cas. 1916E, 656, and in other cases. We think it is a correct statement of the law."

2. That a peculiar and special obligation arises out of the nature of the relationship of the driver of a school bus to the children entrusted to his care. Whether or not this be termed a "'high degree of care,'" in the technical sense, it is generally held that this relationship demands a special care proportionate to the age of the child and its ability, or lack of it, to care for itself.

3. That the zone or area of legal responsibility for care of immature school children extends beyond the mere landing of the child from the bus in a place safe in itself, and includes the known pathway which the child must immediately pursue.

4. That the duty to warn is an imperative incident of the general obligation to exercise care proportionate to the age of the child and the attendant conditions in discharging a school child from a bus.

5. That the question in this class of cases is one for determination by the jury, on the particular facts of the case under consideration.

We cite some of the cases sustaining the foregoing principles: *Burnett* v. *Allen,* 114 Fla. 489, 154 So. 515; *Phillips* v. *Hardgrove,* 161 Wash. 121, 296 P. 559; *Machenheimer* v. *Falknor,* 144 Wash. 27, 255 P. 1031; *Shannon* v. *Central-Gaither Union School Dist.,* 133 Cal. App. 124, 23 P. (2d) 769; *Krametbauer* v. *McDonald,* 44 N. M. 473, 104 P. (2d) 900; *Archuleta* v. *Jacobs,* 43 N. M. 425, 94 P. (2d) 706; *Pendarvis* v. *Pfeifer,* 132 Fla. 724, 182 So. 307; *Taylor* v. *Patterson's Adm'r,* 272 Ky. 415, 114 S. W. (2d)

488; *Gazaway et al.* v. *Nicholson et al.*, 190 Ga. 345, 9 S. E. (2d) 154; *Sheffield* v. *Lovering*, 51 Ga. App. 353, 180 S. E. 523; *Tipton* v. *Willey*, 47 Ohio App. 236, 191 N. E. 804; *Draper* v. *Robinson* (Tex. Civ. App.), 106 S. W. (2d) 825.

Comment on all of these cases is not demanded, nor will space permit it. However, observations in the opinion in *Tipton* v. *Willey, supra,* are so apt that we quote therefrom. After referring to expressions in the opinion in *Cleveland R. Co.* v. *Sebesta,* 121 Ohio St. 26, 166 N. E. 898, emphasizing the general rule which relieves a common carrier of obligation to warn an alighting passenger "in full possession of his faculties," who "was neither an aged nor infirm person, nor was he a child," the Court, in the *Tipton Case,* 191 N. 8. 806, proceeds:

"Certainly the fair implication of this is that, if the carrier accepts for transportation an immature child, its duty would be different and greater than if an adult were the passenger, and such is the rule generally. 4 Ruling Case Law 1160.

"The Supreme Court of Nebraska has said (*Jacobson* v. *Omaha & C. B. St. R. Co.*, 109 Neb. 356, 191 N. W, 327, 332, 31 A. L. R. 563)':

" 'Where the passenger is a child or a person who does not possess full and normal faculties for protecting himself, which condition is known, or, in the exercise of due care, should have been known to the company's employees, the company no doubt owes him a greater degree of care to protect him from danger at the place where he alights than it does the ordinary individual, and, it may be, in such a case, should be on the lookout to warn him of the dangers of passing vehicles. And in any case where there is a particular danger from a passing vehicle, which danger has become known to the company's employee, and where it has become apparent to such employee that

such danger is not known to the passenger about to alight, we take it, of course, to be the duty of the employee to notify the passenger where there is reasonable opportunity to do so.' "

The opinion then, in language directly applicable to the facts of the instant case, proceeds to stress the special relationship of the defendant, the driver of a school bus, to the child plaintiff in that case, as distinguished from that of an employee of a common carrier generally to a passenger, saying:

"In this latter relation the passenger by his voluntary and deliberate act engages the services of the carrier, and is at liberty, of course, not to do so. In the case at bar the plaintiff had no such election. His attendance at school was compulsory and we may assume that the only practical means of compliance with the law was to avail himself of the transportation facilities afforded by the public authorities. As a child, he had the natural right to parental control and protection while at home. While going to and from school and while there, he had the right to some control and protection. It is true that for reasons of public policy the board of education as a quasi corporation is not charged with liability for failing to furnish him with needed care, but it is nevertheless the child's natural right. There is no reason, however, why the immunity enjoyed by the board of education for its negligent care of the pupil should attach to the defendant, who, as a private individual, undertakes for hire to safely transport the child to the school grounds. It is not questioned that he may be liable for his negligence, the only question being whether he was negligent.

"Here was a child too young to appreciate the hazards of crossing the highway. . . . There were moments when this could be done with safety. There were other

moments when to step into the path where traffic flowed meant serious, perhaps fatal injury. The boy himself was incapable of picking out the periods of safety from the periods of danger. Some one had to do that for him, and we find that the bus driver was such person. It was negligent for such driver to direct the boy to alight, and to afford him the opportunity to step in front of approaching traffic, without exercising ordinary care to ascertain whether the way was safe or not and advise the child accordingly."

This fits exactly the facts of the instant case, except that this was a six year old boy, and here we have a six year old girl, with this further difference that in the instant case the driver not only failed to look out for approaching vehicles, but saw the oncoming truck and nevertheless failed, either to restrain, or utter a word of warning to the child. In a headnote prepared "by the Court" it was said:

"The driver of a school bus, who discharges a six year old pupil from the bus and permits him to step into a dangerous lane of traffic, without warning him of such danger, cannot be said as a matter of law to be free from actionable negligence."

Referring again to the case of *White* v. *Chappell, supra,* in which the boy injured was in the company and charge of his mother, and the defendant was an ordinary common carrier only, it is significant that the Supreme Court of North Carolina recognized a broader care coverage in school bus cases than applies to common carriers generally, saying (14 S. E. (2d) at page 850):

"However, the plaintiff insists that the duty owed by defendant Bus Corporation to his intestate continued until he was safely across the highway, and for support he relies upon these cases in other jurisdictions," citing,

in addition to cases we have hereinbefore cited, *Draper* v. *Robinson* (Tex. Civ. App.), 106 S. W. (2d) 825, modified upon other points in 133 Tex. 280, 127 S. W. (2d) 181.

The Court then proceeds:

"An examination reveals that each of these cases relates to the duty owed by the operator of a school bus in transporting children from their homes to school and from school to their homes,—and are clearly distinguishable from the case in hand."

As an example of these cases having this distinguishing feature, the Court cites and quotes from *Taylor* v. *Patterson's Adm'r, supra,* the following (14 S. E. (2d) at page 851):

" 'The operator of a taxi who permits a passenger to alight from a car at a place not ordinarily used in discharging passengers and where many vehicles are accustomed to pass is not bound to warn the passenger of the danger of passing traffic nor to protect him from such danger after he has left the car. . . . but under his special contract Taylor's duty as a carrier continued and required that he exercise the highest degree of care for the boy's safety until he was safely across Greenup avenue to the side where his mother's home was located, where he was out of danger of injury of the passing traffic.' "

We approve this statement of the rule to this extent, that, on the facts of the instant case, the obligation of the school bus driver-defendant, for the safety of this child intrusted to his care, required of him that he either attempt to restrain the child from alighting until the approaching danger had passed, or, if then too late to restrain, at least to warn or caution her of this impending danger, of which she was neither aware nor could appreciate.

 Whether or not in the case before us the defendant driver in fact saw the oncoming truck until after he had opened the door and this child was alighting, too late for him to restrain physically her progress into the impending danger (a question of fact for the jury) the record shows without contradiction that he saw the danger in abundant time to have called to and warned the child, which he did not do, and this obligation to warn was imperatively demanded as an essential incident of his duty to exercise every reasonable care for her safety.

For text book authority we are cited to Blashfield's excellent Cyclopedia of Automobile Law and Practice. In volume 4, Perm. Ed., Sec. 2177, he deals with school busses as one of particular types of busses, and, bearing directly on the issues in the instant case, says:

"If the bus operator opens the door for children to alight, knowing that their path will take them across the road, in the face of an automobile which he knows or in the exercise of ordinary care should know, to be approaching, he cannot be said to be free from negligence as a matter of law. Where the driver lets the children out in the center of a much-traveled highway, at an intersection, without any warning, to go wherever their fancy dictates, and one of them is injured within a few feet of the alighting point, the driver cannot be absolved from negligence as a matter of law."

Cases cited to support this text are among those we have mentioned in this opinion.

 We are unable to give any determinative consideration to the argument, by way of excuse, that the driver had a right to rely upon the facts (1) that the child was accompanied by somewhat older sisters and (2) that the statute required the truck to come to a stop. Pub. Acts 1937, chap. 70. Not only were these other children

too young to be competent for a guardianship duty which would relieve the bus driver of responsibility, but the proof is, by the defendant himself, that he saw that the young child had gone out ahead of the others and was beyond their possible aid or control; and we know of no rule which absolves one from responsibility such as this under such circumstances on the ground that he has a right to assume the law would be obeyed. He plainly saw the truck approaching so rapidly that no assurance was afforded that it would stop in time to save the child from injury.

Nor do we find substance in the defense of an intervening cause in that (1) it was the negligence of the truck driver in running against the child, or (2) the act of the child in running into the truck, which proximately caused the accident. But for the negligence of the defendant in failing to restrain or warn the child, the accident would not have occurred. Clearly then his neglect proximately contributed to the result. A joint tort feasor, he is not absolved by the conduct of others jointly responsible. Any one of those responsible may be sued separately. In responding to and rejecting a like defense offered in *Tipton* v. *Willey, supra,* it being insisted that the negligence of a third party, the driver of the machine that struck the child, was subsequent to the negligence of the defendant bus driver and the defendant's negligence could not, therefore, have been the proximate cause, the Court said that the defendant's charged negligence could have been "one of two proximate causes," even if not "the sole proximate cause." So it is here. In another case mentioned, *White* v. *Chappell,* in discussing "proximate cause," as applied to a failure to exercise due care for the safety of an alighting passenger, injured by a passing motor car, the Court said that a proximate cause of the

injury is "a cause that produced the result in continuous sequence, and without which it would not have occurred." The Court of Appeals on this point well said: "The rule is that if the occurrence of the intervening cause might reasonably have been anticipated, such intervening cause will not interrupt the connection between the original cause and the injury," citing *Gannon* v. *Crichlow*, 13 Tenn. App. 281. This rule applies here to both the act of the child and that of the truck driver.

The amounts of the verdicts are challenged, but we think, with the Court of Appeals, that the severity of the injury and its probable lasting consequences to the child, and the expenses incurred, and likely to be incurred, by the father justify the allowances made.

Finally, complaint is made of the charge in several particulars which we have considered, but agree with the Court of Appeals that no material errors were made in this regard. We are satisfied that no prejudice resulted to the defendant from the use of the language complained of. The charge was on the whole clear and accurate. The case was one for the jury and a directed verdict was properly denied.

The decree of the Court of Appeals is affirmed.