720 S.W.2d 65 (1986)
Anthony Bryant KING, by his next friends, William Robert KING and Barbara King, Plaintiffs-Appellees,
v.
John M. KARTANSON, Armco Steel, Inc., Defendants-Appellees. and
John B. HAMILTON, Sarah Davis and Williamson County School Board, Defendants-Third-Party Plaintiffs-Appellants,
v.
John M. KARTANSON and Armco Steel, Inc., Third-Party Defendants-Appellees.
Court of Appeals of Tennessee, Middle Section, at Nashville.
July 9, 1986.
Application for Permission to Appeal Denied November 3, 1986.
*66 I.C. Waddey, Jr. and Clifford Wilson, Nashville, for plaintiffs-appellees.
Robert Orr, Jr., Levine, Brewer & Krause, Nashville, for defendants-third-party plaintiffs-appellants.
Stephen E. Cox, Nashville, for third-party defendants-appellees.
Application for Permission to Appeal Denied by Supreme Court November 3, 1986.

OPINION
CANTRELL, Judge.
The lower court, sitting without a jury, found two school teachers negligent for allowing a child under their care to cross a street unsupervised where he was struck by an automobile. Under the circumstances of this case we hold that the teachers were not negligent. We, therefore, reverse.
Except for a disagreement about which part of the automobile struck the plaintiff, the parties agree that the findings of fact made by the trial judge are accurate. Those findings, insofar as they relate to the liability of the defendants, are as follows:
"At the time of the incident giving rise to this litigation, the plaintiff, Anthony "Bub" King, was 13 and 1/2 years old and an 8th grade student at Page Middle School, Williamson County. At that time, Bub King had no problem with coordination or clumsiness; was not awkward; was alert and not absent-minded; was a quick learner, being in an advanced math class and had no academic or disciplinary problems at school; had no learning disabilities, hearing or vision problems; and he was a dependable, trustworthy, and conscientious young man, mature for his age. Having been taught from an early age, Bub King knew to look both ways, and had a habit of looking both ways before crossing any street.
The plaintiff and about 110 other 8th grade students took part in a field trip to the Tennessee Performing Arts Center and Methodist Publishing House in Nashville on November 4, 1982. The trip had been planned by several teachers of Page Middle School, including the defendants, Sarah Davis and John Hamilton, who were present on the trip. John Hamilton was Bub's homeroom teacher.
On November 4, 1982, the plaintiff and about 55 other students boarded one of the two busses which came to Nashville for the field trip. The bus carrying the plaintiff went first to the Performing Arts Center. It parked facing south on 6th Avenue, across the street from the Center. The defendants, Davis and Hamilton, were present on that bus. Defendant Davis led all the children across the street in a group after first stepping into the middle of the road to check for oncoming traffic. Defendant Hamilton stayed at the rear of the group of children during the crossing looking for oncoming traffic as the group finsished [sic] traveling across the street. After *67 the visit to TPAC, the children boarded the bus as they left it with Defendant Davis first crossing the street and Defendant Hamilton bringing up the rear to make sure the children crossed in a group.
A similar procedure was followed by the teachers in crossing the street going into and returning from the Methodist Publishing House.
The field trip included lunch at the McDonald's on 27th Avenue, North, across the street from Centennial Park, Nashville. The bus carrying the plaintiff and the two defendants was the first of the two busses to arrive at that McDonald's. The bus parked across the street from the McDonald's on 27th Avenue, North. Before getting off the bus, the students were advised by the defendants that, after eating lunch, they could go back across the street to play in Centennial Park until the return to Page Middle School. The students were aware in advance that the time in the park was part of the trip and several had brought radios, footballs, and frisbees for that purpose. The students were also advised by the defendants to be careful crossing the street. There is no proof that the group of students had to wait for traffic or that any traffic had to be stopped for them to cross 27th Avenue at that time.
As the children who wished to go into McDonald's had to cross a street to get to the restaurant, defendant Davis walked into the center of the street and looked for oncoming traffic, and then remained there until defendant Hamilton brought up the rear. Bub King crossed the street with the group and purchased his lunch.
The defendant, Davis, got her meal and took a seat in a restaurant so that her back was to Centennial Park. A short time later, having already eaten their lunch, the plaintiff and three of his friends, Beth Frazier, Mary "Peebles" Manier, and Elaine Robison, approached the defendant, Davis, and one of them asked permission to go across the street to the park. Ms. Davis granted the permission, advising the students to be careful.
The plaintiff and the three girls exited the building through the door facing Centennial Park and walked across the McDonald's drive-thru lane and parking lot toward a curb which separates the McDonald's parking lot from 27th Avenue. The three girls were walking together and the plaintiff was walking two or so paces in front of them. He participated in their conversation only occasionally as they walked.
When the plaintiff reached the edge of the curb along 27th Avenue, he stopped. He looked to his right, back to his left, and then back to his right. He stepped off the curb with his left foot and took one or two steps before being struck by the vehicle being driven by the third-party defendant, John Kartanson.
Some or all of the three girls saw the vehicle in time to yell out to the plaintiff before he was hit, but it was too late. The collision between the automobile and the plaintiff occurred approximately one to two paces into the street and away from the concrete curb where the plaintiff had stopped and looked. There is conflicting testimony as to exactly how and where the plaintiff was struck by the Kartanson vehicle. There is testimony that the plaintiff walked into the side of the vehicle and was struck by the right side of the vehicle near the right-hand mirror and windshield post. There is also testimony that the plaintiff was struck by the right-front bumper and fender of the vehicle.
Another student, Greg Babcock, witnessed the accident from the other side of the road and about seven yards toward West End Avenue from where the plaintiff was struck. He saw the Kartanson vehicle pull out of the alley at the end of the McDonald's parking lot and come up the street toward the plaintiff. He saw the plaintiff look both ways before stepping off the curb. At that point, Greg Babcock looked back to his left toward the Holiday Inn and when he *68 looked back to his right, the plaintiff was hit. When he witnessed the accident, Greg Babcock had stopped to allow the Kartanson vehicle to pass before crossing the street towards the McDonald's. There is conflicting testimony as to how fast the Kartanson vehicle was traveling. In his deposition, Kartanson testified that he was traveling approximately 10 to 15 miles per hour. Greg Babcock testified that the Kartanson vehicle was traveling approximately 30 to 35 miles per hour. There were no obstructions between the vehicle and the plaintiff and no explicable reason for the plaintiff not to have seen the vehicle.
Greg Babcock further testified that the driver of the Kartanson vehicle had been looking to his left as he approached the point where Bub King was just stepping off the curb. Finally, Babcock testified that after the accident he heard the driver of the Kartanson vehicle say something to the effect that `I didn't see him [Bub King].'"
The record also shows that 27th Avenue North in Nashville leads from West End Avenue north along a stone wall that flanks the western side of Centennial Park. Approximately one block north the street turns slightly to the right and enters the park. Just before entering the park the street is intersected by another street which runs off to the west. Vehicular traffic may also enter 27th Avenue North from an alley at the rear of the McDonald's parking lot.
With these facts in mind we examine the duty with which school teachers must comply. Teachers in local school districts are not expected to be insurors of the safety of students while they are at school. Roberts v. Robertson County Board of Education, 692 S.W.2d 863 (Tenn. App. 1985). The standard of care is that of reasonable and ordinary care under the circumstances. Hawkins County v. Davis, 216 Tenn. 262, 391 S.W.2d 658 (1965). This standard of care varies according to the nature of the persons to whom the duty is owed and the circumstances under which the parties find themselves. Roberts v. Robertson County Board of Education, 692 S.W.2d 863 (Tenn. App. 1985). The extent to which a teacher must supervise the activities of his or her students must be determined with reference to the age and inexperience of the students, their maturity, and the dangers to which they may be exposed. Townsley v. Yellow Cab Company, 145 Tenn. 91, 237 S.W. 58 (1922).
Did the teachers in this case have a duty to conduct their students back across the street to the park after they had finished eating lunch? According to the proof, the plaintiff was a well-coordinated youngster, thirteen years old, alert and not absent-minded, had no hearing or vision problems, and was a dependable young man, mature for his age. He knew to look both ways before crossing a street. There is nothing in the record to suggest that he required any special help in crossing the street or that his normal propensities made him reckless or disdainful of danger.
Twenty-seventh Avenue North, at the location where the accident happened, is not a main thoroughfare. It runs approximately a block between the McDonald's restaurant and Centennial Park and then enters the park. Vehicular traffic can enter the street from the west at two points north of the restaurant, but the street is certainly not a busy, heavily traveled artery. The situation the plaintiff found himself in did not present any unusual dangers or unreasonable risks.
In Gholston v. Richards, 179 Tenn. 645, 169 S.W.2d 846 (1943), an eleven-year-old student was struck when crossing the street after alighting from a school bus. The Supreme Court found the bus driver to be free of negligence saying, "He could not be expected to escort her over the road. She was an intelligent child, eleven years of age, and she testified that she had been riding this bus and getting off at this place for two years and that she knew she had to be cautious and look both ways before crossing the highway."
In another school bus-passenger case the bus driver was held to be negligent in *69 allowing a six-year-old to alight without notice or warning that a truck was approaching from the front when the driver knew that the route of the child would take her around the rear of the bus and into the path of the truck. Cartwright v. Graves, 182 Tenn. 114, 184 S.W.2d 373 (1944). The court distinguished this case from Gholston on the basis of the ages of the children and the knowledge of the driver of the impending danger. The "dominant factor," however, was the age of the child and his or her consequent ability or lack of ability to look after his or her own safety.
We find nothing in the record to suggest that the plaintiff would not use ordinary care for his own safety, or that 27th Avenue North was a street which was unreasonably dangerous to cross. Therefore, we do not believe that the teachers in this case had a duty to personally escort the students across the parking lot from McDonald's (which was probably more heavily traveled than the street itself) and then across 27th Avenue to the park. If there was no duty then the inquiry ends. Roberts v. Robertson County Board of Education, 692 S.W.2d 863 (Tenn. App. 1985).
The judgment of the court below is reversed and the action against the teacher defendants and the county school board is dismissed. The cause is remanded to the Circuit Court of Davidson County for any further proceedings necessary. Tax the costs on appeal to the appellee.
LEWIS and KOCH, JJ., concur.