**Angela Faith PICHON, by next friend and father, Wayne PICHON, Plaintiff/Appellant,**

v.

**OPRYLAND USA, INC., d/b/a Opryland Hotel, Defendant/Appellee.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

June 24, 1992.

Permission to Appeal Denied by Supreme Court Oct. 19, 1992.

that the facts are disputed on that issue and, therefore, reverse the judgment of the lower court.

## I.

The appellant, Wayne Pichon, next friend of an infant, Angela Faith Pichon, filed a complaint against the Opryland Hotel containing the following allegations: that, despite a doctor's order to the contrary, the agents of the hotel required Angela's mother, an employee of the hotel, to perform chores involving heavy lifting while she was pregnant; that as a result she went into premature labor and delivered the baby 24 weeks into her pregnancy; that the early delivery caused the baby to have cerebral palsy and other severe afflictions.

The defendant answered the complaint denying any liability and then filed a motion for summary judgment, alleging that there were no genuine issues of fact on the issue of causation and that the defendant was entitled to a judgment as a matter of law. In support of the motion, the defendant filed the depositions of the infant's mother, her obstetrician and a pediatric neurologist who had treated the infant. The trial judge granted summary judgment to the defendant, finding that "there is no evidence before the Court that the premature delivery of the plaintiff Angela Faith Pichon was the direct and proximate result of any negligence or wrongdoing on the part of the defendant and further that there was no evidence that the physical problems of the plaintiff Angela Faith Pichon resulted from her early delivery or from any negligence on the part of the defendant.

Tyree B. Harris, Nashville, for plaintiff/appellant.

Patrick A. Ruth, Raymond S. Leathers, Stephen K. Rush, Dianna Baker Shew, Nashville, for defendant/appellee.

## OPINION

CANTRELL, Judge.

The sole question on this appeal is whether the trial judge correctly held that the defendant is entitled to summary judgment on the issue of causation. We find

## II.

The following facts are stated in the light most favorable to the plaintiff, *Lindsey v. Miami Development Corp.*, 689 S.W.2d 856 (Tenn.1985). In the early part of her pregnancy Mrs. Pichon was placed on lifting restrictions by her doctor. The hotel honored the restrictions for a short period of time, but Mrs. Pichon's supervisor ordered her to do her regular job, which required heavy lifting. One day,

while lifting heavy coolers filled with ice and beer, she felt a pain in her abdomen. She worked the next day but did not have anything heavy to lift. The following day she went into premature labor. After trying to prevent delivery for several days, her doctors decided to perform a caesarean section. The baby weighed 1 pound 11¾ ounces after a 24 week gestation period. The baby also suffered from cerebral palsy.

Mrs. Pichon's doctor, Dr. Pippin, gave the following testimony with respect to what caused the premature labor:

A. ... Like I say, her initial examination was entirely normal. Subsequently, however, at about 17 weeks gestation, she had some minor bleeding, minor bleeding episode which resolved spontaneously, and she actually had two of these minor bleeding episodes, which, again, even though her pregnancy was apparently progressing normally she had no cervical dilation at that time and overall her pregnancy looked good.

We do know that bleeding in early pregnancy may predispose one to later preterm delivery. The exact physiology of this is unsure, but we know that to be a fact. So, because of all these factors, the fact that she had had a poor obstetric history, by what she had told us, the fact that she was a smoker, aged 35 years of age and the fact that she had some minor bleeding episodes in early pregnancy, I told her I thought would put her in a higher risk category and I recommended that, you know, she limit the amount of manual labor activity that she performed.

\*   \*   \*   \*   \*   \*

Q. And with the lifting excess over that, what problems would that present with the pregnancy? You may have already said it.

A. Well, what we are getting at, we can't establish in every patient a direct cause and effect, but the more physical labor she engages in, the more weight lifting activities she has to do, the more likely she is to deliver prematurely in somebody that is at risk for premature

deliver [sic]. So there is never a situation where I can say, you know, if you continue working you are going to deliver prematurely, if you continue lifting, if you continue what you are doing you are going to deliver prematurely.

Another patient like Mrs. Pichon might not have had any adverse effect that we could detect from continuing work lifting a lot of weight, but we know that some of these patients are going to be predisposed to deliver early and that lifting a lot or having a heavy manual labor job is going to be one factor that can cause them to deliver early.

So it's not just a thing you can quantify exactly, but, you know, it's one of those things you do want to explain to patients, that it's important that they shouldn't engage in heavy manual labor jobs.

\*   \*   \*   \*   \*   \*

A. Well, you know, the weight lifting and these other things we talked about that happened to her were just part of her life history, her being 35, her smoking, having some bleeding in early pregnancy, those are all risk factors but not really causes of preterm labor. And heavy manual labor can be a factor as well. So I'm saying there is no definite cause. She has several predisposing factors for preterm labor but no real true cause you can put your finger on as to why she is the one patient that delivers early.

Q. But lifting can do it?

A. We are saying lifting. I want to be real clear about what I say. I don't want to say that having a manual labor job of lifting 20 or 25 pounds on a repetitive basis causes people to have preterm labor, otherwise we would have to put every pregnant woman there is on disability or on the same restrictions, but I am saying any woman that has any predisposing factor needs to be put on restrictions, because they are already at risk for preterm delivery, and then heavy manual labor may cause them to deliver early if they are predisposed to it already, not if they are normal.

On the subject of what caused the baby to have cerebral palsy, Dr. Barbara Olson, the pediatric neurologist, testified as follows:

Q. And what kind of an injury would cause CP? Is it a lack of oxygen?

A. CP is a disorder that may be caused by many different things. There are several factors that have been associated with CP and there are many of them. In looking at data from some papers that I quickly got out, there are several—

Q. Let me interrupt. Would you just identify what paper it is that you're looking at there?

A. Okay. This is a brief summary of a paper published by Karen Nelson and Ellenberg called "Antecedents of Cerebral Palsy" published in the New England Journal of Medicine in 1986. They analyzed over 45,000 pregnancies and followed children up to seven years of age and tried to identify what was significant in causing CP in these children.

They found that it was not a single cause but, rather, many different statistically based causes. Some of the ones that were of significance were maternal mental retardation. Sibling having some type of movement difficulty. Hyperthyroidism. Mother having seizures during pregnancy. A history of two or more prior fetal deaths.

Also, they found that a gestational age of 32 weeks or less was, in their words, the most powerful predictor of cerebral palsy. Then they go on to list other less predictive factors. So I think that there are several different types of medical conditions that can be associated with CP and it is not just simply a lack of oxygen.

Q. Okay. And so—but the most common factor is being born at less than 32 weeks gestation?

MR. RUTH: Show my objection to form.

THE WITNESS: I think that being born prematurely is a very common cause. In terms of saying statistically most common, I don't think I could say

that. I'd have to look at the absolute data to quote them correctly.

### III.

The proximate cause of an injury is the cause that produced the result in continuous sequence and without which it would not have occurred. *Cartwright v. Graves,* 182 Tenn. 114, 184 S.W.2d 373 (1944). An act or omission is the proximate cause of an injury if the injury would not have occurred but for the act or omission. *Tri–State Transit Co. v. Duffey,* 27 Tenn. App. 731, 173 S.W.2d 706 (1940).

We think the facts recited above establish a basis from which a trier of fact could conclude that heavy lifting caused the premature labor of Mrs. Pichon and that the child's cerebral palsy was caused by her premature birth. Dr. Pippin testified that lifting heavy weights could cause premature labor in a person with certain risk factors. Because he found certain of these factors present in Mrs. Pichon's case, he placed her on weight restrictions.

Although Dr. Olson's testimony is not so clear, we think the substance of her testimony is that a major cause of cerebral palsy in infants is premature birth. She alluded to a study that supported her testimony. She also cited several other possible causes of cerebral palsy, but it is for the jury to decide which cause was the proximate cause. *Crowe v. Provost,* 52 Tenn.App. 397, 374 S.W.2d 645 (1963).

It is true that neither doctor gave an opinion linking the premature labor or the child's cerebral palsy to the facts of this case. But, expert testimony does not have to be in the form of an opinion. Rule 702 of the Tennessee Rules of Evidence says that a witness qualified as an expert may testify in the form of an opinion or *otherwise,* if the testimony will substantially assist the trier of fact. *See Nashville Chattanooga & St. Louis Railway Co. v. Jackson,* 187 Tenn. 202, 213 S.W.2d 116 (1948).

For the reasons cited, we reverse the judgment of the lower court and remand the case to the Circuit Court of Davidson County for any further proceedings neces-

sary. Tax the costs on appeal to the appellee.

TODD, P.J., and LEWIS, J., concur.