377 S.E.2d 644

**Jeanette SHIA and John Shia**

v.

**T.E. CHVASTA, M.D. and Ohio Valley Medical Center, Inc.**

No. 18379.

Supreme Court of Appeals of West Virginia.

Nov. 23, 1988.

Rehearing Denied Feb. 22, 1989.

William S. Druckman, Hunt & Wilson, Charleston, for Shia.

Patrick S. Cassidy, Bradley H. Thompson, O'Brien, Cassidy & Gallagher, Wheeling, for Chvasta.

Elba Gillenwater, Jr., Galbraith, Seibert & Kasserman, Wheeling, for OVM.

NEELY, Justice:

Jeannette Shia had been suffering from severe diarrhea for over three weeks and consulted Dr. Thomas Chvasta, a gastroenterologist. When Dr. Chvasta examined her he discovered that she was dehydrated and had lost weight; consequently, Dr. Chvasta recommended that Mrs. Shia be admitted to Ohio Valley Medical Center the following week for tests to determine the cause of her problem. Over the weekend, however, Mrs. Shia's condition deteriorated and she was admitted to Ohio Valley Medical Center through the emergency room. Dr. Chvasta was listed as her attending physician.

The admitting diagnosis was a possible non-tropical sprue. Non-tropical sprue is a gastrointestinal disease marked by a failure of the body to absorb certain nutrients, including Vitamin K, a vitamin essential in the blood clotting process. The medical records indicate that Mrs. Shia was severely dehydrated when she was admitted to the hospital and that her acid-base balance was out of alignment. On 16 June 1977, a

platelet test showed a markedly elevated platelet count due to the gastrointestinal illness. Platelets consist of cell-like matter within the blood that is integral to the clotting process. The higher the platelet count, the more likely it is that blood will clot.

On 16 June 1977 a blood test known as a "prothrombin time" was run. This test measures the blood's clotting time; the higher the clotting time, the greater the risk that a person will hemorrhage. Two prothrombin times were run on 16 June, and both of them were markedly elevated.

On the same day, Dr. Moncado, a resident physician who had just rotated to the medicine service, was telephoned and told of Mrs. Shia's prothrombin time results. These results were also discussed with Dr. Chvasta, and it was determined that 15 milligrams of Aquamephyton (Vitamin K) should be given intramuscularly. Vitamin K, as indicated above, is essential to blood clotting. Dr. Moncado communicated this order by telephone. However, an error was made and 50 milligrams of Aquamephyton were given by a nurse rather than the prescribed 15 milligrams. The following day Dr. Chvasta came to see Mrs. Shia. Unfortunately Dr. Chvasta did not check the chart to determine whether a correct dose of Vitamin K had been given the previous day, and he ordered an additional 20 milligrams of Aquamephyton to be given intravenously that day and the next day. Intravenous administration is the most potent and, perhaps, most dangerous way to administer Vitamin K.

Within 24 hours of receiving the last dose of Aquamephyton, i.e., after receiving 90 milligrams in all, 40 milligrams of which were by intravenous injection, Mrs. Shia suffered a stroke from a blood clot in the brain. The stroke left her permanently paralyzed over half her body and totally disabled. She lost her long- and short-term memory. For many years she was unable to speak, and her present condition of being unable to speak normally is a permanent condition.

Mrs. Shia and her husband, John, sued Dr. Chvasta and the Ohio Valley Medical Center in the Circuit Court of Ohio County. The case was tried before an Ohio County jury, which returned a verdict in favor of the defendants. The plaintiffs now appeal assigning as their principal error the failure of the trial court to give Plaintiffs' Instruction No. 38. Plaintiffs' Instruction No. 38 is sometimes called the "thin-skull" instruction; it would have told the jury that the defendants "took the plaintiff as they found her." [1]

At trial defendants did not contest the fact that Dr. Chvasta and employees of Ohio Valley Medical Center were negligent in administering 50 milligrams of Aquamephyton to the plaintiff. That was essentially stipulated. The entire issue at trial was whether the negligence of the defendants was the proximate cause of plaintiff Jeanette Shia's injuries. The plaintiffs presented expert medical testimony tending to show that excessive doses of Vitamin K caused or contributed to Mrs. Shia's stroke. Plaintiffs' expert explained that because Mrs. Shia was dehydrated from her underlying condition, her blood was thicker, and thicker blood is more likely to clot than normal blood.

Plaintiffs' expert opined that Mrs. Shia's increase in blood platelets—a condition related to her underlying gastrointestinal condition—also made her blood thicker and more susceptible to clotting, and that her

---

**1.** Plaintiffs Instruction No. 38 read as follows:

The Court instructs the jury that the defendants take the plaintiffs as they find them. By that I mean that there is no excuse to negligently injure or hurt a person and then claim that the injuries or hurt to the person would not have happened had that person been a physically or mentally stronger person. You are to look at the person who is injured or damaged, and you are to award damages, if you find that the defendants were liable, based upon the actual damage to the person involved. You may not take into consideration that any such injury or damage may not have happened to a different person, as a different person is not on trial.

In this case, the defendants took Jeanette Shia as she was, and any physical or mental damages that Jeanette Shia suffered which resulted in the present condition and which were a proximate result of any negligence of the defendants creates liability on the part of the defendants and entitles the plaintiffs to damages therefor.

acidosis (imbalance in the acid-base alignment) had the tendency to constrict blood vessels, which also made the blood more prone to clot. Plaintiffs' expert testified that when a patient has malabsorption syndrome, the blood does not form clots, even though it is more prone to do so, because the prothrombin time elevates. This elevation occurs because Vitamin K is not being absorbed by the body.

The bottom line in plaintiffs' expert's testimony was that Mrs. Shia's bodily functions were generally out of alignment and that the medical problem presented to the defendants was to restore equilibrium. In this regard, the plaintiffs' expert testified as follows:

> Well, what you want to do is you want to bring the factors back into equilibrium, but you want to do it very gradually, very slowly so that you don't create a state in which you start inducing thromboembolization. So properly what is recommended is that you give lower doses and treat this phenomenon that is to decrease your blood factors very slowly bringing back into normality your coagulation factors. At the same time it gives you time to treat the other things that are wrong, the acidosis, the dehydration, the electrolyte imbalance. And, if you will, you gradually bring everything back into physiological equilibrium.
>
> What occurred here is you gave at least a three times dose necessary to treat the patient. You gave it right now and so you very rapidly corrected everything not giving yourself time to correct dehydration, acidosis and all of its inherent problems and the high platelet count, just with the 50 milligrams I.M.

Transcript, p. 94–95.

Plaintiffs' expert concluded that the administration of too much Vitamin K, too rapidly, corrected the prothrombin time without concurrent correction of the dehydration, acidosis and elevated platelet count, and this rapid correction of the prothrombin time by the negligent administration of the Vitamin K, without the correction of Mrs. Shia's other problems, created an environment that left her more prone to form a blood clot than if she had been treated non-negligently. Plaintiffs' expert admitted, however, that appropriate measures were undertaken to address the dehydration and acidosis and that these conditions were improving by the time the Vitamin K was administered.

The defendants relied primarily on evidence that the 35 additional milligrams of Vitamin K did not proximately cause the stroke. Defendants' expert testified that the view of the plaintiffs' expert "... doesn't make physiological sense...." Defendants' expert testified that in his opinion, Mrs. Shia's stroke was an embolic stroke, which resulted from a condition of marantic endocarditis, a condition that occurs in patients with a chronic disease like Mrs. Shia's, and is manifested by small thrombi (clots) on the inside of the heart. These small thrombi, in turn, eventually break off and cause a stroke.

Defendants' expert testified that marantic endocarditis is in no way related to an excessive administration of Vitamin K. Furthermore, defendants' expert testified that although Vitamin K is necessary for normal blood coagulation, any excess of Vitamin K in the system is excreted from the body and could not cause or contribute to the harm suffered by Mrs. Shia.

The only significant issue in this case is whether the court erred in failing to give Plaintiffs' Instruction No. 38, which told the jury that the defendants take the plaintiffs as they find them. Although the plaintiffs also assign as error the trial court's giving of Defendants' Instruction No. 10 that told the jury that before they could find for the plaintiffs they must determine that the risk of harm created by the defendants' negligence was foreseeable, plaintiffs did not object to Defendants' Instruction No. 10 at trial. Rule 51, *W.Va. RCP* provides in pertinent part:

> ... No party may assign as error the giving or the refusal to give an instruction unless he objects thereto before the arguments to the jury are begun, stating distinctly, as to any given instruction, the matter to which he objects and the grounds of his objection; but the court

or any appellate court, may, in the interest of justice, notice plain error in the giving or refusal to give an instruction, whether or not it has been made subject of an objection.

Consequently, under Rule 51, *W.Va.RCP* the assignment of error concerning Defendants' Instruction No. 10 was waived. Certainly Plaintiff's Instruction No. 10 was not plain error.

At the trial of this case there were seventy-two jury instructions submitted to the court, of which fifty-one were given. The issue in this case was whether the admitted negligence of the defendants proximately caused the injury to Mrs. Shia. Although the plaintiffs make a great issue here of the trial court's failure to give the "thin-skull" instruction, they made no more than the standard objection to the court's failure to give that instruction at trial.

Certainly a *strenuous* objection is not required to preserve error; however, the failure of plaintiffs to implore the court to give Instruction No. 38 or some similar instruction indicates that a "thin-skull" theory was not central to the plaintiffs' case. Furthermore, it was stipulated in oral argument before this court that plaintiffs' counsel was not limited in his closing argument, and was allowed to urge the proposition that a defendant takes a plaintiff as he finds her. Counsel was permitted to point out that sick people come to hospitals because they are sick, and that doctors and hospitals owe a duty of care to patients not to worsen their condition through negligent treatment.

The evidence before the jury squarely raised a straightforward issue of proximate cause. Plaintiffs' expert testified that an excessive, negligently administered dose of Vitamin K proximately caused Mrs. Shia's stroke. The defendants' expert testified that excessive amounts of Vitamin K are excreted from the system and cannot have the harmful effect of causing a stroke. Thus, the jury was asked a simple question: Did the admitted negligence of the defendants cause Mrs. Shia's stroke or would she have had the stroke even if the excessive Vitamin K had not been administered. The jury, in turn, answered that the Vitamin K had nothing to do with the stroke.

There were numerous accurate instructions on proximate cause, including Plaintiffs' Instruction No. 32, which said:

A "proximate cause" of any injury is the cause which, in natural and continuous sequence, unbroken by an efficient intervening cause, produces an injury, and without which the injury would not have occurred. It is an act which immediately causes an injury or a failure to act to prevent an injury.

The trial court also gave Plaintiffs' Instruction No. 33 which said:

A party is at fault when his or her negligence or fault was a proximate cause or *contributing factor* to the event which brought about the damages for which the claim is made. [Emphasis added.]

Dr. Chvasta also submitted instructions on the issue of proximate cause that were given by the trial court. Defendants' Instruction No. 4, for example, stated:

The jury is charged that the burden is on Jeanette Shia to prove a deviation from the standard of care by Dr. Chvasta in the treatment of her disease and that the deviation caused *or contributed to* the stroke she experienced. In this case, Jeanette Shia must not only show negligence, but that negligence is a proximate cause of the injury. [Emphasis added.]

The latter two of these instructions both allowed the plaintiffs to recover if the defendants' negligence proximately caused or *contributed* to Mrs. Shia's stroke.[2]

---

**2.** These instructions allow the jury to find liability even if the defendants' negligence is not the sole cause of plaintiff's injury. They allow the jury to consider contributing factors and thus include the "value of a chance" doctrine that we discussed extensively in *Thornton v. CAMC,* 172 W.Va. 360, 305 S.E.2d 316 (1983). The "value of a chance" doctrine (*Restatement 2d of Torts,* § 323(a)) refers to cases where an injured plaintiff claims her original chances of recovery were diminished because of a doctor's negligence and such negligence was a substantial factor in bringing about the ultimate injury. Essentially this means that a jury need not find that the doctor's negligence was the only cause that produced the injury in order to find for the

Although Plaintiffs' Instruction No. 38 concerning the principle that defendants take plaintiffs as they find them is an accurate statement of the law, it would not have aided the jury in the decision of this case because during trial the defendants did not attempt to avoid responsibility by asserting that their negligence would not have injured a stronger person. The defendants' defense was that their negligence would not have injured anyone, and that their negligence in no way whatsoever caused Mrs. Shia's stroke. Scientifically, they relied on their expert's testimony that excessive Vitamin K is excreted by the body before it can do any damage.

In determining whether a trial court committed error by refusing a proffered instruction, this court will review the jury instructions as a whole. *See Roberts v. Stevens Clinic*, 176 W.Va. 492, at 497–98, 345 S.E.2d 791 at 797 (1988) and authorities cited therein. As we said in *Royal Furniture v. City of Morgantown*, 164 W.Va. 400, 263 S.E.2d 878 (1980), "refusal to instruct on a point already sufficiently covered by other correct instructions given does not constitute reversible error." 164 W.Va. at 407, 263 S.E.2d at 883. And as the Supreme Court of Virginia pointed out in *Cox v. Mabe*, 214 Va. 705, 204 S.E.2d 253 (1974), "even if the requested instruction was a correct statement of the law, refusal to grant such instruction was not error when the jury was fully instructed on all principles involved."

"[I]t is not error to refuse to give an instruction to the jury, though it states a correct and applicable principle of law, if the principle stated in the instruction refused is adequately covered by another instruction or other instructions given." Syl. pt. 3, *Roberts v. Stevens Clinic*, 176 W.Va. 492, 345 S.E.2d 791 (1986); syl. pt. 1, *State v. Johnson*, 168 W.Va. 45, 282 S.E.2d 609 (1981); syl. pt. 1, *WV Dep't of Highways v. Buckley*, 164 W.Va. 77, at 81–83, 260 S.E.2d 826, at 829 (1979). Syl. pt. 3, *Mor-*

*gan v. Price*, 151 W.Va. 158, 150 S.E.2d 897 (1966).

Accordingly, for the reasons set forth above, the judgment of the Circuit Court of Ohio County is affirmed.

AFFIRMED.

plaintiff. We also discussed the "value of a chance" doctrine in a recent *per curiam* case,

*Catlett v. MacQueen*, 180 W.Va. 6, 375 S.E.2d 184 (1988); *see* note 8, and accompanying text.