412 S.E.2d 212

**Carroll R. HOWE, as Administrator of the Estate of Florence J. Howe, Plaintiff Below, Appellant,**

v.

**James THOMPSON, M.D., Defendant Below, Appellee**

No. 20101.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 24, 1991.

Decided Nov. 5, 1991.

James A. McKowen, Hunt & Wilson, Charleston, for appellant.

Herbert G. Underwood, Steptoe & Johnson, Clarksburg, for appellee.

BROTHERTON, Justice:

This appeal involves a suit resulting from the death of Mrs. Florence Howe, who died on April 21, 1985. Her husband, Mr. Carroll Howe, claims that the treatment rendered by her physician, James Thompson, M.D., actually increased her risk of having a heart attack, the condition of which she eventually died. Mrs. Howe had several medical problems, including obesity, diabetes, hypertension, high cholesterol and triglycerides, in addition to a prior myocardial infarction.

Following Mrs. Howe's death, Mr. Howe filed a complaint in the Circuit Court of Harrison County on April 16, 1987, naming Dr. Thompson, Ronald Meredith, R.Ph., and Lumberport Pharmacy, Inc. as defendants. Mr. Meredith and the pharmacy were dismissed from the case following settlement. The case against Dr. Thompson went to trial on October 3, 1989.

At trial, testimony was given that Mrs. Howe's diabetes was not controllable by medication and that she refused to take insulin injections. Dr. Thompson advised her that if she would lose weight, she would probably not need any insulin. However, Mrs. Howe did not lose any appreciable amount of weight. Dr. Thompson also testified that at one time, he had considered by-pass surgery for Mrs. Howe,

but that her obesity precluded her as a candidate for the surgery. Expert opinions from cardiologists were presented by both the plaintiff and the defendant, and it was noted at trial that occasionally, Mrs. Howe did not take her medicine.

The jury retired on October 12, 1989, following the instructions and closing arguments. The plaintiff requested that a specific instruction on the "eggshell plaintiff" be given, which was refused by the court. At that time, over the objection of the plaintiff, the jury was given a general verdict form and a special verdict form, allowing the jury to allocate percentage of fault to the plaintiff's decedent, Florence Howe, the defendant, and, if necessary, to the settling defendants.

During its deliberations, the jury returned to the judge to ask a question regarding the allocation of negligence. They stated:

We are all in agreement that Dr. Thompson was negligent in some areas of care. However we do not feel this contributed more than 20% to Mrs. Howe's injuries (death).

We don't feel the pharmacy/Mr. Meredith contributed to her death.

We don't feel that Mrs. Howe contributed to her own death.

We do feel however that all her medical problems, (heart disease, diabetes, high blood pressure, high cholesterol, obesity), prior to Dr. Thompson's care of this patient were the major contributing factors to her death.

Question: Can we assign a major portion of the % of fault to her complicated medical conditions prior to her care by Dr. Thompson? We do not want to assign fault to her personally but don't feel Dr. Thompson contributed significantly to her death.

The plaintiff requested that the jury be instructed to return its verdict for the plaintiff and against the defendant and proceed to determine the amount of damages. The court responded negatively to the jury's last question, stated above, and instructed the jury to complete the general verdict form.

The jury returned a second time to ask two questions of the court:

Do we have to answer only the general verdicts # 1 and # 2?

or

Can we still use the special verdict sheet to proportion the % of fault?

The plaintiff then requested that the jury be instructed that it was to complete only the general verdict form and not use the special verdict form, which would allocate negligence among the parties. At this point, the court instructed the jury that they must complete both the general verdict and special verdict forms.

Shortly thereafter, the jury returned to deliver its verdict. In its verdict, the jury found for the plaintiff, but allocated 60% of the fault to the plaintiff's decedent, Mrs. Howe, 40% to the defendant, Dr. Thompson, and none to Ronald Meredith or Lumberport Pharmacy.

The plaintiff again requested that the jury be instructed that it was to complete only the general verdict form and not the special verdict form. The court then instructed the jury to return to its room and proceed to determine the amount of damages which the plaintiff had suffered as a proximate result of the defendant's negligence.

The jury again returned with a question:

We were confused about our instructions. We understand that if we assigned only a portion of the blame (less than 50%) to Dr. Thompson then no $ damages would be awarded.

We were in agreement that Dr. Thompson was not 100% at fault. Since we agreed that he was 40% at fault it seemed that the only verdict we could come up with was for the plaintiff (as per instructions); we thereafter had to assign a % to Mrs. Howe as no other choices were available.

We awarded for the plaintiff since that was the only way we could assign any portion of fault to Dr. Thompson. We do not think he was over 50% at fault.

Please advise about our confusion.

Also, can we award no $ amount?

The court instructed the jury, over the objection of the plaintiff, that it could award no money damages but that it should recall there were medical expenses and burial expenses that had been stipulated by the parties. The plaintiff attempted to have the jury recalled so that it could be instructed to consider "uncontroverted" evidence as to lost earnings of the plaintiff's decedent and loss of comfort, society, and companionship by the plaintiff's decedent's family members. The court refused.

The jury then returned with a verdict for the plaintiff and against the defendant in the amount of $10,000. The allocation of fault on the verdict form remained the same. Thereafter, Mr. Howe moved for a judgment notwithstanding the verdict on the issue of liability in accordance with the jury's findings of fact and for a new trial on the issue of damages. On November 7, 1989, the court entered an order which stated that:

In accordance with said verdict, it is ORDERED that the plaintiff, Carroll R. Howe, administrator of the estate of Florence J. Howe, recover nothing of the defendant, James Thompson, M.D., and it is further ORDERED that the defendant, James Thompson, M.D., shall recover of the plaintiff, Carroll R. Howe, as administrator of the estate of Florence J. Howe, the costs of this civil action as taxed by the clerk of this court, to all of which the plaintiff, by counsel, objects and excepts.

The Circuit Court of Harrison County denied the plaintiff's motion for a judgment notwithstanding the verdict, a motion for relief from judgment on the issue of liability, and a motion for a new trial on the issue of damages on February 1, 1990. This proceeding is an appeal by the appellant, the plaintiff below, from that final ruling.

The appellant, Mr. Howe, alleges numerous errors resulting from the trial below. The first error revolves around the court's refusal to give an instruction defining negligence which was proffered by the plaintiff. Secondly, the appellant complains that the court also refused to give an instruction proffered by the appellant which stated that the defendant took the plaintiff as he found her, also known as the "eggshell plaintiff" instruction. Next, the appellant argues that the court should not have allowed the jury to consider negligence on the decedent's part in allocating fault when "there was not scintilla of evidence to support a finding of negligence on her part." Finally, the appellant maintains that the court erred in refusing to grant a new trial on the issue of damages. We find the remaining assignments of error to be meritless and accordingly, do not address them.

■ The first assignment of error deals with the lower court's refusal to give appellant's instruction defining negligence. The instruction proffered by the plaintiff reads as follows:

Since the allegations in this case are based, in main, upon negligence, it is necessary that you know what negligence means. The Court instructs you that negligence is the doing of something which a reasonably prudent physician would not do, or the failure to do something which a reasonably prudent physician would do, under similar circumstances to those shown by the evidence. It is the failure to use ordinary and reasonable care.

Ordinary or reasonable care is that care which persons of ordinary prudence would use in order to avoid injury to others under similar circumstances to those shown by the evidence.

Although the circuit court refused to give that particular instruction, it did give extensive instructions regarding negligence and the standard of care. The following instruction was given on the physician's duty to exercise the appropriate degree of care:

The court instructs the jury that as to the Defendant, it was his duty to exercise that degree of care and skill and diligence which is ordinarily exercised by those members of the profession who specialize in the same branch of a profession having regard to the state of professional knowledge at the time, the facts,

circumstances, and the condition in the particular case. The court instructs the jury that as to the Defendant, it was his duty to exercise such reasonable and ordinary care, skill and diligence, as is ordinarily exercised by members of the medical profession in good standing with regard being had as to the state of medical knowledge at the time. If you believe from a preponderance of the evidence that in treating the decedent, Florence Joanne Howe, the Defendant violated the foregoing duty, you are instructed that you should then find the Defendant was negligent and if you further believe from the preponderance of the evidence that any such negligence was a proximate cause of the death of Florence Joanne Howe, then you should award damages to the Plaintiff in accordance with the other instructions in this case.

The court also instructed the jury with regard to the obligation to comply with a minimum standard of care for a specialist and the consequences of failing to meet that standard where the failure is a proximate cause or contributes to the death:

> The court further instructs the jury that although a physician is not an insurer of the good health of his patient, he is required to comply with the minimum standards of care applicable to him as a specialist in internal medicine and if the Defendant, Dr. Thompson, fails to meet the applicable standard of care and such failure was a proximate cause or a proximately contributing factor in the death of Florence Joanne Howe, then he is liable for damages to the Plaintiff.

> The court further instructs the jury that if the evidence in this case establishes that the Defendant failed to properly treat Florence Joanne Howe for diabetes, high blood pressure, high cholesterol, and triglycerides or heart disease in accordance with the standard of care and that such failure proximately caused or proximately contributed to her death, then the Defendant is liable to the Plain-

tiff in this case for such damages that you may find from the evidence.

\*   \*   \*   \*   \*   \*

> The court instructs the jury that before the actual negligence in the treatment of Florence Howe by the Defendant, Doctor Thompson, can be established, it must appear from the testimony of competent physicians that in the care and treatment of Florence Howe, Doctor Thompson failed to do something which he should have done or did something which he should not have done and which did not accord with the standard of care, skill and diligence practiced by physicians in the same and similar circumstances who are internists.

> The court instructs the jury that what was required of Doctor Thompson in the treatment of Florence Howe was that he use that degree of care and skill that an ordinarily careful and skillful doctor, who was an internist, would have used under the same or similar circumstances. Doctor Thompson was not guilty of negligence unless he failed to use such care and skill. Therefore if you find and believe from a preponderance of all the evidence that in treating Florence Howe, Doctor Thompson used the degree of care and skill above defined, then Doctor Thompson is not liable to the Plaintiff in this case and if you so find, your verdict should be in favor of the Defendant, Doctor Thompson.

▮ After reviewing the record below, we conclude that the instructions actually given by the court do not differ substantially from that requested by the appellant. A court is not obligated to give every instruction requested, especially if it is repetitive. In fact, in *Royal Furniture Co. v. City of Morgantown*, 164 W.Va. 400, 263 S.E.2d 878 (1980), we held that it is not reversible error to refuse to give a correct instruction when the point was already sufficiently addressed. *Id.* 164 W.Va. at 407, 263 S.E.2d at 883. In this case, both sets of instructions adequately discuss negligence and the standard of care of a physician.[1]

---

**1.** West Virginia Code § 55–7B–1 *et seq.* (1991), the Medical Professional Liability Act, also pro-

vides the element of proof necessary to show that an injury or death resulted from the failure

In fact, the instructions given by the court are somewhat more restrictive, and more advantageous to the plaintiff, than that proffered by the plaintiff.

■ In his second assignment, the appellant argues that the lower court erred in refusing to give the "eggshell plaintiff" instruction. The appellant argues that it is particularly appropriate to instruct the jury in this case that the defendant took the appellant "as he found her," since Mrs. Howe suffered from multiple medical conditions which contributed to her death.

■ In *Shia v. Chvasta*, 180 W.Va. 510, 377 S.E.2d 644 (1988), this Court described the eggshell plaintiff rule as "an accurate statement of the law," but rejected its use in that case because it involved a "straightforward issue of proximate cause." *Id.* 180 W.Va. at 514, 513, 377 S.E.2d at 648, 647. The Court noted that since the physician in *Shia* was not attempting to avoid responsibility by asserting that his negligence would not have injured the decedent but for the patient's particular pre-existing condition, the instruction would not have aided the jury. *Id.* 180 W.Va. at 514, 377 S.E.2d at 648. At syllabus point 2, the Court concluded that:

> Even if a requested instruction is a correct statement of the law, refusal to grant such instruction is not error when the jury was fully instructed on all principles that applied to the case and the refusal of the instruction in no way impeded the offering side's closing argument or foreclosed the jury's passing on the offering side's basic theory of the case as developed through the evidence.

Therefore, it was not reversible error for the trial court to refuse to give an "eggshell plaintiff" instruction.

The circumstances in this case fit squarely within the parameters set by *Shia*. The evidence at trial did not show that the defendant below attempted to assert the decedent's conditions as an excuse for his actions. All involved, including Dr. Thompson, knew about her pre-existing conditions. Dr. Thompson treated her with her obesity, high cholesterol, heart condition, diabetes, and hypertension in mind, although she refused to take insulin shots and was known to forget medication. Like *Shia*, we believe the issue in this case is one of proximate cause and negligence, and not a question of whether Dr. Thompson "took the plaintiff as he found her."

■ Moreover, even without the "eggshell plaintiff" instruction, it is clear the jury was sufficiently instructed on the issues involved:

> The court instructs the jury that the jury may not find Florence Joanne Howe was negligent solely on the basis that she failed to lose weight. In order that the jury be permitted to allocate any percentage of fault to Florence Joanne Howe, the Defendant must prove by a preponderance of the evidence that Florence Joanne Howe failed to exercise reasonable care for her well-being and that any such failure proximately caused or contributed to her death. If the evidence fails to establish either of those elements, then you must find Florence Joanne Howe free from fault and you may not allocate any percentage of negligence to her. Negligence on the part of Florence Joanne Howe to use reasonable care for her safety is not to be presumed. On the contrary, the presumption is that Mrs. Howe performed her duty to use such reasonable care and for it to be found otherwise, the same must be shown by a preponderance of the evidence in this case. Further, the burden of proof that Florence Joanne Howe was

---

of a health care provider to follow the accepted standard of care:

> (a) The health care provider failed to exercise that degree of care, skill and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances; and

> (b) such failure was a proximate cause of the injury or death.

W.Va.Code § 55–7B–3. Clearly, the instructions given complied with the provisions of the Act. The effective date of the Medical Professional Liability Act is May 22, 1986.

negligent rests on the Defendant, James Thompson, M.D.

\* \* \* \* \* \*

The court instructs the jury that before you may assess a percentage of fault against Florence Joanne Howe you must first find from a preponderance of the evidence that Mrs. Howe failed to exercise ordinary, reasonable care in attempting to comply with the instructions of Doctor Thompson. Further before you may assess a percentage of fault against Florence Joanne Howe, you must find that such failure, if any, was a proximate cause of or proximately contributed to her death ... Therefore if you find from a preponderance of the evidence that Mrs. Howe did not fail to exercise ordinary or reasonable care in attempting to comply with the instructions of Doctor Thompson or that such failure on her part did not proximately cause or proximately contribute to her death, then you may find in favor of Mrs. Howe and indicate on your verdict form that you allocate no percentage of fault to her.

■ In syllabus point 3 of *Roberts v. Stevens Clinic Hosp., Inc.*, 176 W.Va. 492, 345 S.E.2d 791 (1986), this Court stated:

"It is not error to refuse to give an instruction to the jury, though it states a correct and applicable principle of law, if the principle stated in the instruction refused is adequately covered by another instruction or other instructions given." Syl. Pt. 3, *Morgan v. Price*, 151 W.Va. 158, 150 S.E.2d 897 (1966).

Thus, it was neither prejudicial nor reversible error to reject the "eggshell plaintiff" instruction where the instructions, as a whole, adequately covered the principle contained in the proffered instruction.

■ Next, the appellant contends that the lower court erred in allowing the jury to consider whether there was any negligence on the part of the decedent when "there was not one scintilla of evidence to support a finding of negligence." The appellant maintains that since there was evidence to show Mrs. Howe seriously attempted to lose weight, the defendant could not blame her death on her failure to lose weight. However, a cursory review of the transcript reveals that more than enough evidence exists to show possible negligence on the part of Mrs. Howe in her failing to take medication and refusing insulin, at least sufficient for the jury to reach its conclusion.

The plaintiff's argument ignores another crucial point. In *King v. Bittinger*, 160 W.Va. 129, 231 S.E.2d 239 (1976), this Court stated that "[w]e have adhered to the principle that slight evidence will support an instruction of the defendant's theory of the case...." *Id.* 160 W.Va. at 134, 231 S.E.2d at 242. Like our decision in *King*, we believe that the evidence below supported the theories propounded by the defendant in this case. The fact that the decedent attempted, unsuccessfully, to lose weight does not absolve her of all fault in her unfortunate demise. Thus, the court correctly instructed the jury to determine the percentage of fault allocated to the decedent, as well as that allocated to Dr. Thompson.

■ We question, however, why the court instructed the jury to determine the damages involved when the fault on the part of Dr. Thompson was less than 50%. In *Bradley v. Appalachian Power Co.*, 163 W.Va. 332, 256 S.E.2d 879 (1979), we held that:

A party is not barred from recovering damages in a tort action so long as his negligence or fault does not equal or exceed the combined negligence or fault of the other parties involved in the accident.

*Id.* at syl. pt. 3. In this case, the jury allocated 60% of the fault to the decedent, which exceeded the 40% allocated to Dr. Thompson. It is unnecessary for a trial judge to require a jury to resume deliberations to assess damages where the jury, which had been instructed to return both general and special verdict forms, returns a partial verdict which does not assess damages, but clearly indicates that a defendant's liability may not result in damages because the fault allocated to the plaintiff by the jury equals or exceeds 50%. However, the error on the part of the trial

judge was not prejudicial to the appellant and does not constitute reversible error.

The final issue on appeal is whether the lower court erred in refusing to grant the appellant's motion for a new trial on the issue of damages. The appellant argues that a new trial is necessary because the court failed to mention to the jury the other elements of damages sought when the jury interrupted its deliberations to ask whether it had to award money damages. The appellant's claim revolves around his assertion that the jury clearly did not believe Mrs. Howe was in any way negligent and responsible for her own death. However, the appellant somehow ignores the jury's straightforward allocation of 60% of the fault to the decedent. Despite the confusion surrounding their deliberations, it is clear from the questions to the judge that while the jury was reluctant to blame her for her own death, it believed that she contributed to her general condition in some manner. Thus, we cannot find sufficient error to require a new trial on the issue of damages. As we find no reversible error below, we affirm the verdict of the Circuit Court of Harrison County.

Affirmed.