429 S.E.2d 61

**Denise Rene YEAGER, Plaintiff Below, Appellant,**

v.

**James Gregory MORGAN, Defendant Below,**

**and**

**The Board of Education of the County of Harrison, a West Virginia Corporation, Defendant Below, Appellee.**

No. 20659.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 20, 1993.

Decided March 25, 1993.

January 22, 1992.

---

6. Appellant's prior counsel withdrew due to his unavailability for trial which was scheduled for

Scot S. Dieringer, Clarksburg, for appellant.

James A. Varner, Catherine D. Munster, Clarksburg, for appellee.

PER CURIAM:

This action is before this Court upon an appeal from the February 20, 1991, order of the Circuit Court of Harrison County, West Virginia. The circuit court granted the appellee's, the Board of Education of Harrison County, motion for directed verdict and dismissed any claim the appellant, Denise Rene Yeager, had against the appellee. On appeal, the appellant asks that this Court reverse the ruling of the circuit court and grant the appellant a new trial. This Court has before it the petition for appeal, all matters of record and the briefs of counsel. For the reasons stated below, the judgment of the circuit court is reversed and remanded.

I

On the afternoon of March 26, 1979, Billie Allen, a bus driver for the appellee, was transporting children from school to their respective destinations. The appellant, then 14 years old, was a passenger on Ms. Allen's bus. Upon arriving at the appellant's home, Ms. Allen turned on the school bus safety lights, and all traffic stopped. Ms. Allen then discharged the appellant at her driveway in front of her home. The appellant exited the bus and ran down beside the bus, along the right-hand side, to the rear of the bus. She then attempted to cross the road to check her mail box, which she had done on a number of occasions. It was when the appellant was running across the road that she was struck by the appellee, James Gregory Morgan, in the opposite lane of traffic from which the school bus was traveling. Mr. Morgan was driving a small sports car and collided with the appellant causing her severe injuries. The safety lights on the bus were turned off when the accident occurred. However, it is disputed by the parties as to how far the bus traveled prior to the occurrence of the accident.

II

In March of 1985, the appellant filed a civil action in the Circuit Court of Harrison

County, West Virginia, against James Gregory Morgan and the Harrison County Board of Education. Subsequently, Mr. Morgan settled with the appellant and was dismissed from the case.

The appellee, the Board of Education of Harrison County, moved for summary judgment against the appellant. On August 29, 1989, the trial judge denied the appellee's motion.

Subsequently, the trial commenced on February 3, 1991. The appellant called the following people as witnesses in her case-in-chief: Dr. Kent Thrush, an orthopedic surgeon, testified as to the extent of the appellant's injuries; Mr. Gerald Towns, a bus driver for the Clarksburg Transit Authority, testified as to how the accident occurred; Mr. George Dawson, the Director of School Transportation at the time of the accident, testified as to the procedures and policies of the Harrison County School Board regarding the discharge of students from school buses; and, Denise (Yeager) Minear,[1] the appellant, and Ms. Eileen Wagner, the appellant's mother, also testified as to the events and other information pertinent to the accident. It should be noted that due to the severity of her injuries, the appellant is unable to remember the actual turn of events that occurred surrounding the accident.

At the close of the appellant's case, the appellee moved for a directed verdict on the grounds that the appellant failed to present evidence that the appellee had breached any duty owed to the appellant, and thus, the proximate cause of the appellant's injuries was her own negligence. On February 20, 1991, the circuit court granted the appellee's motion for a directed verdict and dismissed any claim the appellant had against the appellee.

It is from the order of February 20, 1991, that the appellant appeals to this Court.

### III.

The primary issue on appeal is whether the circuit court erred in directing a verdict against the appellant and in favor of the appellee. The appellant maintains that there was sufficient evidence presented regarding the question of the appellee's liability, and therefore, contends that the circuit court's decision constitutes reversible error.

This Court stated in syllabus point 1 of *Hinkle v. Martin*, 163 W.Va. 482, 256 S.E.2d 768 (1979): " 'When the plaintiff's evidence, considered in the light most favorable to him, fails to establish a prima facie right of recovery, the trial court should direct a verdict in favor of the defendant.' Point 3, Syllabus, *Roberts v. Gale*, 149 W.Va. 166, 139 S.E.2d 272 (1964)." This Court also recognized in *Totten v. Adongay*, 175 W.Va. 634, 635, 337 S.E.2d 2, 3 (1985): "However, it is equally established that a claim should remain within the hands of a jury unless manifest insufficiencies in the evidence compel otherwise."

Accordingly, it is well recognized in this jurisdiction that:

' "Upon a motion to direct a verdict for the defendant, every reasonable and legitimate inference fairly arising from the testimony, when considered in its entirety, must be indulged in favorably to plaintiff; and the court must assume as true those facts which the jury may properly find under the evidence. Syllabus, *Nichols v. Raleigh–Wyoming Coal Co.*, 112 W.Va. 85, 163 S.E. 767 (1932)." ' Point 1, Syllabus, *Jenkins v. Chatterton*, 143 W.Va. 250, 100 S.E.2d 808 (1957). Syl. pt. 1, *Jividen v. Legg*, 161 W.Va. 769, 245 S.E.2d 835 (1978). With these standards in mind, we turn to whether the plaintiff's evidence, taken in the light most favorable, established a prima facie case.

"In an action founded on negligence the plaintiff must show affirmatively the defendant's failure to perform a duty owed to

---

1. Subsequent to the filing of this action, the appellant has married. Her last name is now Minear.

the former proximately resulting in injury[.]" Syl. pt. 1, in part, *Keirn v. McLaughlin*, 121 W.Va. 30, 1 S.E.2d 176 (1939). *See also* syl. pt. 1, *Matthews v. Cumberland & Allegheny Gas Co.*, 138 W.Va. 639, 77 S.E.2d 180 (1953).

■ In the case at hand, the appellant's burden is two-fold. First, the appellant must prove that the appellee owed the appellant a duty when transporting her to and from school. *W.Va.Code*, 18–5–13(6)(a) [1990] provides that "[t]he boards, subject to the provisions of this chapter and the rules and regulations of the state board, shall have authority: (a) to provide at public expense adequate means of transportation ... for all children of school age[.]" Furthermore, *W.Va.Code*, 18A–5–1 [1983] provides, in part, that:

> The teacher shall stand in the place of the parent or guardian in exercising authority over the school, and shall have control of all pupils enrolled in the school from the time they reach the school until they have returned to their respective homes, except that where transportation of pupils is provided, the driver in charge of the school bus or other mode of transportation shall exercise such authority and control over the children while they are in transit to and from the school.

According to the *Code*, the appellee had the responsibility to provide transportation for the appellant, and the bus driver had authority and control over the appellant when transporting the appellant from school to her home. Furthermore, it has been noted in the case law that "children, wherever they go, must be expected to act upon childish instincts and impulses; and others who are chargeable with a duty of care and caution toward them, must calculate upon this, and take precaution accordingly." *Deputy v. Kimmell*, 73 W.Va. 595, 603–04, 80 S.E. 919, 923 (1914).

At trial, the appellant presented evidence on the procedures and policies of the Harrison County School Board regarding the discharge of students from school buses by eliciting testimony from Mr. George Dawson, Director of School Transportation for the Harrison County Schools at the time of the accident. Mr. Dawson testified that he trained Billie Allen and other bus drivers at the time in question. When Mr. Dawson was questioned by counsel regarding the standards and policies concerning the transportation of students, the following exchange took place:

Q. Okay, was it not a policy of the state of West Virginia and also the Harrison County School Board that bus drivers were trained that when they discharge a pupil or a student from a bus that before they turn off their warning lights and proceeded to move forward that they insure that the child arrived at a safe place?

A. Yes, that's right. When—if they are discharging a passenger, why they pull in and they open the door, they let the children out. They check their mirrors the one on the right, the one overhead and the one on the left and as their obligation is to get out from where they are sitting without hitting any of the students that they let out.

. . . .

Q. Okay.

A. But the last thing I usually check as I drove is make sure where those students was when I pulled out.

. . . .

Q. Okay, is it not the Board's policy that before you turn off your flashing warning signals and proceed on after discharging a child, that you make sure that child is not in any jeopardy before you take off?

A. That they are not near the bus where you can run over them.

Q. Okay, not in any jeopardy?

A. It is not near the bus where the bus will run over the child.

Q. Would that include the back of the bus?

A. It would include all the way around the bus as far as that goes if there was a child back there.

Q. And again before the bus takes off, you should know where your student or students are? Is that correct?

A. Always.

. . . .

Q. Thank you very much. That you should know where the child or children are before you start proceeding, sir, isn't that correct?

A. Before you start to leave, you should know where your children are and if you don't why you should try to find out.

Furthermore, the real danger zones of the bus, as Mr. Dawson testified, are the wheel wells because the wheels draw the children's attention. Mr. Dawson explained that it is important the bus driver utilize the mirrors flanking each side of the bus to insure that the children are clear of these areas before pulling out.

■ After a review of Mr. Dawson's testimony, it is clear that the appellee has a duty to use reasonable care to insure the students' safe departure from the school bus.[2] We are of the opinion that the jury was presented with sufficient evidence regarding the duty to be obeyed by the appellee, and thus, the trier of fact should have been given the opportunity to determine whether the appellee fulfilled its obligation of safely discharging the appellant from the bus.

The next element the appellant must prove, in order to establish a prima facie case of negligence against the appellee, is that the appellee's failure to perform the aforementioned duty proximately resulted in the appellant's injury. The appellant called Mr. Gerald Towns, a bus driver for the Clarksburg Transit Authority, to testify as to the proximate cause of the appellant's injuries. On the day of the accident, Mr. Towns' bus was the second vehicle behind the school bus. When questioned as to what he observed that day, Mr. Towns testified as follows:

Q. Did the bus have flashing lights on?

A. Yes, sir.

. . . .

Q. Okay, would you tell the jury what you saw on that day? Did you see Denise Minear exit the school bus or a young lady exit the school bus?

A. I seen a child get off the bus, run off the bus, run down beside on the right hand side along the berm back behind the bus and onto crossing the road in a run.

. . . .

Q. [O]kay, I will just ask you again, tell us in your own words what happened when Ms. Minear got off the bus?

A. Well the child got off the bus and she ran down the right hand side of the bus. When she got about three quarters of the way down, the lights of the bus went out and she ran fast towards the rear. I knew she was going to do this run behind the bus and cross the street because she had been doing it every trip that I met them down in that direction on that route. And I seen this one guy he speeded up—the lights went out. I knew they were going to meet.

Q. And was she hit with the automobile?

A. Yes, sir, she was knocked about twice the height of the bus.

. . . .

Q. Okay, how far had the bus moved when Denise was hit by the car?

A. It could be very little movement. She or he could move some, I don't recollect exactly how far he got but it wasn't too far.

Mr. Towns went on to testify that on numerous other occasions he had seen the appellant run down beside the bus just as she did the day of the accident. Mr. Towns' eyewitness account raises many questions as to what or who was the proximate cause of the accident.

The appellee asserts that before the appellant entered the roadway, the bus had turned its lights off, closed its door and proceeded into the flow of traffic. The

2. At trial, the appellant introduced into evidence the manual on School Bus Operator Instructional Program issued by the West Virginia Department of Education School Transportation Division. The manual specifically provides that

"most cases involving accidents while boarding and alighting from a bus use the factors of 'reasonable care' and 'safe places' in determining negligence."

appellee further asserts that the appellant was the proximate cause of her own injuries due to the appellant's admission at trial that if she would have looked before crossing the road and not run into the traffic, then the accident would not have happened. The appellant's mother, Ms. Eileen Wagner, testified that the appellant was old enough to cross the road by herself, and she had successfully done so many times before the accident. Therefore, the appellee argues that at 14 years of age the appellant knew to stop, look and listen before crossing the road. The appellee concludes by contending that once the child has safely alighted from the bus, then the board of education has no further responsibility other than to avoid running over the child.

Many other jurisdictions have dealt with the issues presented herein. For instance, the Supreme Court of Tennessee has held that the question of negligence of a school bus driver and the driver's liability to a child struck by an oncoming vehicle after alighting the bus, is for the jury. *See Cartwright et al. v. Graves*, 182 Tenn. 114, 184 S.W.2d 373, 379 (1944). In that same case, the Supreme Court of Tennessee further found that "the zone or area of legal responsibility for care of immature school children extends beyond the mere landing of the child from the bus in a place safe in itself, and includes the known pathway which the child must immediately pursue." *Id.* at 378. The Supreme Court of Wisconsin has held, in regard to the negligence issue, that "it was not necessary that the driver foresee the precise harm to be suffered by the plaintiff; it was merely necessary that he foresee that some harm would likely follow." *Lempke et al. v. Cummings et al.*, 253 Wis. 570, 34 N.W.2d 673, 675 (1948).

After reviewing our state's case law, as well as the case law of other jurisdictions, we believe a dismissal of the case in favor of the appellee is unwarranted. There is sufficient evidence based upon the testimony of Mr. Towns and Mr. Dawson to go to the jury on the question of the appellee's negligence. Furthermore, the question remains as to whether the bus driver acted with reasonable care in turning off the bus' safety lights and proceeding into the flow of traffic when the appellant was running towards the rear of the bus.

We have held that "[q]uestions of negligence, due care, proximate cause and concurrent negligence present issues of fact for jury determination when the evidence pertaining to such issues is conflicting or where the facts, even though undisputed, are such that reasonable men may draw different conclusions from them." Syl. pt. 5, *Hatten v. Mason Realty Co.*, 148 W.Va. 380, 135 S.E.2d 236 (1964). As in this case, we are of the opinion that the trial court erred in directing a verdict in favor of the appellee when the appellant established a prima facie case of negligence against the appellee, and the facts and circumstances present a question for determination by the jury. Therefore, the judgment of the circuit court is reversed, and we remand this case to the circuit court for a new trial in accordance with the principles enunciated herein.

Reversed and remanded.