466 S.E.2d 548

**James Edward TIPPIE, Jr., Plaintiff Below, Appellee,**

v.

**James Edward TIPPIE, Sr., Defendant Below, Appellant.**

**No. 22914.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 26, 1995.

Decided Dec. 15, 1995.

---

700

Robert A. Taylor, Masters & Taylor, Charleston, for Appellee.

Elliot G. Hicks, Kay, Casto, Chaney, Love & Wise, Charleston, for Appellant.

PER CURIAM:

This is an appeal by James E. Tippie, Sr., (hereinafter "the Appellant") from a December 17, 1994, order of the Circuit Court of Kanawha County denying the Appellant's motion for a judgment notwithstanding the verdict in a civil action instituted by the Appellant's adult son, James E. Tippie, Jr., (hereinafter "the Appellee") against his father for injuries sustained in a lawn mower accident. The Appellant contends that the lower court erred by failing to set aside the jury verdict in favor of the Appellee or, in the alternative, granting a new trial. We affirm the decision of the lower court.

I.

While residing in an apartment in St. Albans, West Virginia, with his brother, Rick Tippie, in 1988, the Appellee purchased a lawn mower. The Appellee was thereafter transferred to Pittsburgh, Pennsylvania, and used the lawn mower at his residence in Pittsburgh during the summer of 1989. Upon his return to West Virginia in September 1989, he resided in an apartment which did not require him to mow grass, and he stored his lawn mower in the basement of the Appellant's home in Dunbar, West Virginia. The lawn mower remained in that basement from the fall of 1989 until the accident which injured the Appellee on April 23, 1990.

Although the Appellee testified that he had no objection to anyone using the lawn mower, there was no evidence that anyone actually used the lawn mower during its storage at the Appellant's home. The Appellee testified, however, that he had seen James "Midget" Tippie, the Appellee's half-brother who resided at the Appellant's home, attempting to start the mower in the Spring of 1990.[1] On April 23, 1990, the Appellee visit-

1. Midget Tippie was the only son residing at the Appellant's home during the storage of the mow-

er in the basement of that residence. Although Midget, 15 or 16 years old at the time of the

ed the Appellant's home and decided to mow the grass for his father.[2] The Appellee testified that the mower appeared to be in good condition and that he attempted to start it in the conventional manner while it was sitting in the basement. As he did so, flames erupted from beneath the mower, and the Appellee was severely burned. Firefighters at the scene later testified that the gas tank was disconnected from the mower at the time of the fire and that tools were scattered around the mower as if someone had recently worked on it. The Appellee denied working on the mower, and there was no other evidence that any other individual worked on it prior to the Appellee's attempt to start the engine.

At trial, the Appellee sought to establish the negligence of the Appellant by eliciting testimony regarding the Appellant's lack of parental supervision over Midget and other teenage boys allegedly working on lawn mowers in the Appellant's basement. Specifically, the Appellee presented evidence at trial indicating that the Appellant knew that the boys tinkered with lawn mowers in his basement, knew that such attempts to repair mowers could leave the mowers in a potentially unsafe condition, and failed to prevent the boys from working on the mowers. The Appellee asserted that the Appellant had a duty to exercise reasonable care for the safety of an invitee, such as the Appellee, and had a duty to warn the Appellee of any hazards of which he knew or should have known.[3]

The Appellant testified that he had personally never touched the mower, that he had not directed anyone else to use or repair it, and that he did not know whether Midget had touched the mower. The Appellant did explain that Midget attended classes in the morning at South Charleston High School and proceeded to Ben Franklin Technical School, where he worked on motors, later in the afternoon. In the two-hour break between the two schools, Midget and other boys would typically congregate in the Appellant's basement. The Appellant admitted that he knew that Midget and his friends worked on lawn mowers in the basement, but he had no specific knowledge regarding whether anyone had worked on the particular lawn mower that injured the Appellee.

The Appellee called Dr. Rex Haynes, a mechanical engineer teaching at West Virginia University, as an expert. He explained the basic components of a lawn mower to the jury and stated that a cracked spark plug wire or the spark plug connection could cause a spark of electricity and a fire. He surmised that the lawn mower housing had been disassembled and had not been correctly reassembled. Because the bolts which anchored the housing and the gas tank were not properly reinstalled, Dr. Haynes testified that any attempt to start the mower would cause the gas line between the fuel tank and the carburetor to separate. This would have allowed fuel to collect under the housing, creating a vapor which ignited into a fire when the mower was started. It was Dr. Haynes' opinion that the explosion then caused the housing to be blown off the mower, explaining why firemen found the housing separated from the mower immediately after the accident.

The Appellant presented the expert testimony of Harold Franck, an electrical engineer, who testified that the gas tank was not attached at the time of the fire. Mr. Franck and Mr. Coy Gainer, another expert for the Appellant, both believed that the portion of the mower which contained the rope pull starter was disconnected from the mower at the time the Appellee attempted to start the

incident, did not testify at trial due to his military service, his evidentiary deposition was used at trial.

**2.** The Appellant had suffered an amputation of his leg and also experienced breathing difficulties. His four sons performed the lawn care duties for their father.

**3.** Although this matter was presented as a premises liability matter, it may have been more ap-

propriately tried as a bailment issue in which the bailor son gratuitously bailed the mower to his father. *See* 8 Am.Jur.2d *Bailments* §§ 213–35 (1980) (discussing ordinary care and diligence to be exercised by a gratuitous bailee.) The bailment theory was neither addressed below nor in this appeal, and it is therefore considered waived. *See Whitlow v. Board of Educ.*, 190 W.Va. 223, 226, 438 S.E.2d 15, 18 (1993).

mower. If that had been the case, the Appellee would have had knowledge that the mower was inoperable, and it could not have been started in the conventional manner.

Subsequent to the trial on October 27 and 28, 1994, the jury returned a verdict of $165,000 for the Appellee, allocating fault at 49% negligence by the Appellee and 51% negligence by the Appellant. The lower court denied the Appellant's post-trial motions on December 17, 1994, and the Appellant thereafter appealed to this Court.

## II.

■ The Appellant contends that the lower court erred by refusing to grant a directed verdict, by refusing to give certain instructions offered by the Appellant, by adopting the Appellee's jury form, and by allowing the verdict of the jury to stand. The Appellant emphasizes that a property owner is liable for injuries occasioned by an unsafe condition only if the condition was known or should have been known by him. As we explained in syllabus point three of *Haddox v. Suburban Lanes, Inc.*, 176 W.Va. 744, 349 S.E.2d 910 (1986):

'The owner or the occupant of premises owes to an invited person the duty to exercise ordinary care to keep and maintain the premises in a reasonably safe condition. This duty requires the owner or the occupant of premises to exercise ordinary care to protect an invited person from injury inflicted by other persons present on such premises; and if such owner or occupant fails to perform such duty and his negligence is the proximate cause of injuries inflicted upon an invited person by another person such owner or occupant is liable to such invited person.' Syl. Pt. 4, *Puffer v. Hub Cigar Store*, 140 W.Va. 327, 84 S.E.2d 145 (1954).

176 W.Va. at 745, 349 S.E.2d at 911. In syllabus point four of *Haddox*, we explained that " '[t]o be actionable, negligence must be the proximate cause of the injury complained of and must be such as might have been reasonably expected to produce an injury.' Syl. Pt. 3, *Hartley v. Crede*, 140 W.Va. 133, 82 S.E.2d 672 (1954) [, *overruled on other grounds, State v. Kopa*, 173 W.Va. 43, 311

S.E.2d 412 (1983) ]." 176 W.Va. at 745, 349 S.E.2d at 911. We also stated in syllabus point five of *Haddox* that " '[a] person is not liable for damages which result from an event which was not expected and could not reasonably have been anticipated by an ordinarily prudent person.' Syl Pt. 6, *Puffer v. Hub Cigar Store*, 140 W.Va. 327, 84 S.E.2d 145 (1954)." 176 W.Va. at 745, 349 S.E.2d at 911. *See also* Syl. Pt. 12, *Anderson v. Moulder*, 183 W.Va. 77, 394 S.E.2d 61 (1990).

The Appellant asserts that there is insufficient evidence in the present case that he had or should have had knowledge of the dangerous condition or that the injury could possibly have been anticipated by an ordinarily prudent person. Consequently, the Appellant contends that the lower court erred by failing to direct a verdict against the Appellee.

■ With regard to the circumstances under which a directed verdict is appropriate, we stated the following in syllabus point one of *Yeager v. Morgan*, 189 W.Va. 174, 429 S.E.2d 61 (1993):

' " 'Upon a motion to direct a verdict for the defendant, every reasonable and legitimate inference fairly arising from the testimony, when considered in its entirety, must be indulged in favorably to plaintiff; and the court must assume as true those facts which the jury may properly find under the evidence.' Syllabus, *Nichols v. Raleigh–Wyoming Coal Co.*, 112 W.Va. 85, 163 S.E. 767 (1932)." Point 1, Syllabus, *Jenkins v. Chatterton*, 143 W.Va. 250, 100 S.E.2d 808 (1957).' Syl. pt. 1, *Jividen v. Legg*, 161 W.Va. 769, 245 S.E.2d 835 (1978).

189 W.Va. at 175, 429 S.E.2d at 62. *See also* Syl. Pt. 1, *Bowling v. Ansted Chrysler–Plymouth–Dodge, Inc.*, 188 W.Va. 468, 425 S.E.2d 144 (1992).

■ In syllabus point four of *Sias v. W–P Coal Co.*, 185 W.Va. 569, 408 S.E.2d 321 (1991), we explained the following: " 'In a case where the evidence is such that the jury could have properly found for either party upon the factual issues, a motion for judgment notwithstanding the verdict should not be granted.' Syl. pt. 7, *McClung v. Marion*

*County Commission,* [178] W.Va. [444], 360 S.E.2d 221 (1987)." 185 W.Va. at 571, 408 S.E.2d at 323. We have also emphasized that the standard governing the determination of the motion for judgment notwithstanding the verdict is the same standard controlling the resolution of a directed verdict. *Huffman v. Appalachian Power Co.,* 187 W.Va. 1, 415 S.E.2d 145 (1991). In syllabus point six of *Huffman,* we explained as follows:

> In considering whether a motion for judgment notwithstanding the verdict under Rule 50(b) of the West Virginia Rules of Civil Procedure should be granted, the evidence should be considered in the light most favorable to the plaintiff, but, if it fails to establish a *prima facie* right to recover, the court should grant the motion.

187 W.Va. at 3, 415 S.E.2d at 147. In syllabus point six of *Johnson ex rel. Johnson v. General Motors Corp.,* 190 W.Va. 236, 438 S.E.2d 28 (1993), we explained that " '[w]hen a case involving conflicting testimony and circumstances has been fairly tried, under proper instructions, the verdict of the jury will not be set aside unless plainly contrary to the weight of the evidence or without sufficient evidence to support it.' Syl. pt. 4, *Laslo v. Griffith,* 143 W.Va. 469, 102 S.E.2d 894 (1958)." 190 W.Va. at 238, 438 S.E.2d at 30.

In the present case, examining the matter in a light most favorable to the Appellee, we find that the evidence was sufficient to defeat the Appellant's motions for a directed verdict. The Appellee presented evidence regarding the Appellant's leniency in permitting his son and his friends to tinker with lawn mowers in the basement. Testimony indicated that the Appellant had knowledge of the activity and still permitted the boys to continue working on mowers. The Appellee also presented testimony indicating that the lawn mower had been worked on prior to the accident and had been reassembled improperly. Although that evidence was contradicted by the Appellant, such contradiction does not influence the determination of the directed verdict issue and actually enhances the Appellee's argument that the matter had to be submitted to the jury for determination.

The evidence also revealed that the Appellant was familiar with the workings of a lawn mower and had personally attempted to repair other mowers. That fact is relevant to the jury's determination of the foreseeability issue to the extent that the Appellant admitted his familiarity with lawn mowers and did not feign ignorance of such. As we stated in syllabus point three of *Sewell v. Gregory,* 179 W.Va. 585, 371 S.E.2d 82 (1988):

> The ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result if it is not exercised. The test is, would the ordinary man in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?

*Id.* at 586, 371 S.E.2d at 83. Under that standard, our inquiry must be the extent to which the Appellant could have reasonably foreseen that bodily injury could occur due to his leniency in permitting the boys to tinker with lawn mowers in his basement. As Justice Cardozo so aptly put it, "[t]he risk reasonably to be perceived defines the duty to be obeyed." *Palsgraf v. Long Island R.R. Co.,* 248 N.Y. 339, 162 N.E. 99, 100 (N.Y. 1928). The Appellee contends that, especially due to the Appellant's own knowledge of the workings of lawn mowers, he should have foreseen that allowing his son and his friends to attempt to repair lawn mowers could lead to bodily injury of the type suffered by the Appellee. Recently addressing the foreseeability issue in *Johnson v. Mays,* 191 W.Va. 628, 447 S.E.2d 563 (1994), we explained that questions of the foreseeability that harm may result from placing gasoline in an unlabeled container at the request of ten-year old boys were questions of fact for the jury. *Id.* at 634, 447 S.E.2d at 569. In that case, we framed the question in terms of whether the defendant could "have foreseen the dangerous consequences of selling gasoline in a Pepsi can to the minor. . . ." *Id.*

The Appellee in the present case developed evidence at trial in support of the proposition that harm of the nature suffered was foreseeable, and absent instructional error indicating a possibility of jury misunder-

standing, we do not find the jury's conclusion untenable.

### III.

■ We find that the jury was properly instructed regarding the law of negligence and the duty of an owner of a premises to another person entering those premises. Without objection by the Appellant, the court gave the Appellee's instructions 1, 2, 3, 4, and 5. Instruction 1 set forth the duty owed by the Appellant to the Appellee "to exercise reasonable care to keep and maintain his premises in a safe condition." That instruction also informed the jury that if it found that the Appellant failed to maintain his premises in a reasonably safe condition and if it found that such failure proximately caused or contributed to the Appellee's injuries, then it should return a verdict for the Appellee.

Instruction 2 dealt with the definition of negligence and informed the jury that if it found that if the Appellant, through his action or inaction, failed to exercise reasonable care for the safety of the Appellee and that the injuries were a proximate result thereof, the verdict should be for the Appellee. Instruction 3 defined ordinary care, and Instruction 4 defined foreseeability and the natural consequences of a negligent act. Instruction 5 informed the jury that proximate causation is established "whenever it appears from the evidence in the case that the act or omission played a substantial part in bringing about or actually causing the injury or damage; and that the injury or damage was either a direct result or a reasonably probable consequence of the act or omission."

Although the Appellant did not object to the instructions summarized above, he contends that the lower court erred in failing to give his Instructions 7 and 8. Instruction 7 would have informed the jury of the actual acts the Appellant would had to have performed in order to justify a verdict against him. Instruction 7 stated that the Appellee had the burden of proving one of the following things: that his father altered the mower, creating the hazard and the accident; or that his father knew or should have known that the mower had been altered, that the alteration created a hazard of the type injur-

ing the Appellee, that he failed to warn his son, and that his failure to warn was the act without which the injury to the Appellee would not have occurred.

Instruction 8 would have informed the jury that if it found that the Appellant "did not disassemble the lawn mower, and that he did not direct that someone else disassemble the lawn mower and leave it in a place where it was foreseeable that the plaintiff would try to tamper with it and sustain injury, then you must find a verdict against the plaintiff...."

The lower court rejected these instructions and concluded that Instructions 1 through 5 adequately informed the jury of the law relating to this matter. The court explained, "What concerns me is that I'm telling them that if they find certain facts rather then telling them, 'Here's the law, and then you apply it.' I'm leaping that step and suggesting, 'Here are the facts,' particularly the disassembling of the lawn mower."

■ We concluded that the lower court properly acknowledged that the function of jury instructions is to inform the jury of the law relating to the facts with which it has been presented rather than to actually apply that law to such facts. Moreover, Instructions 7 and 8 dealt with issues of law which had already been considered in the other instructions. Even assuming that the requested instructions were proper statements of applicable law, we explained the following in syllabus point two of *Howe v. Thompson*, 186 W.Va. 214, 412 S.E.2d 212 (1991):

> " 'It is not error to refuse to give an instruction to the jury, though it states a correct and applicable principle of law, if the principle stated in the instruction refused is adequately covered by another instruction or other instructions given.' Syl. Pt. 3, *Morgan v. Price*, 151 W.Va. 158, 150 S.E.2d 897 (1966)." Syllabus point 3, *Roberts v. Stevens Clinic Hosp., Inc.*, 176 W.Va. 492, 345 S.E.2d 791 (1986).

186 W.Va. at 215, 412 S.E.2d at 213. We also explained the following in syllabus point one of *Howe:*

> 'Even if a requested instruction is a correct statement of the law, refusal to

grant such instructions not error when the jury was fully instructed on all principles that applied to the case and the refusal of the instruction in no way impeded the offering side's closing argument or foreclosed the jury's passing on the offering side's basic theory of the case as developed through the evidence.' Syllabus point 2, *Shia v. Chvasta*, 180 W.Va. 510, 377 S.E.2d 644 (1988).

186 W.Va. at 215, 412 S.E.2d at 213. *See also Dowey v. Bonnell*, 181 W.Va. 101, 380 S.E.2d 453 (1989).

Based upon the evidence properly presented by the Appellee, we find no error in the lower court's denial of the Appellant's motion for a directed verdict at the close of the Appellee's case. Further, we find no error in the lower court's subsequent denial of a directed verdict at the close of the Appellant's case or its decision not to disturb the jury's verdict. Our review of the instructions given to the jury, as well as those suggested by the Appellant and rejected by the lower court, reveals no instructional error.[4]

█ This is a case in which the jury was presented with allegations of fact, heard testimony thereon, was properly informed of the law relating to such facts, and rendered a verdict in accordance therewith. The Appellant contends that the jury could not possibly have concluded that the Appellant was negligent in failing to restrict his son and friends from working on mowers and further contends that an ordinarily prudent person could not have foreseen that such activity would lead to bodily injury. The jury obviously disagreed, and, absent instructional or other error, we will not reverse the jury's judgment. We find no grounds for reversal of the lower court and affirm its decision in all respects.

Affirmed.

MILLER, Retired Justice, sitting by temporary assignment.

ALBRIGHT, J., did not participate.

---

4. The Appellant contends on appeal that the jury verdict form was suggestive because it asked the jury a leading question, "Do you, the jury, find for the plaintiff?" The Appellant maintains that a more appropriate phrasing would have been an open ended question as to the liability of the respective parties. The Appellant also alleges on appeal that the verdict form was redundant to the extent that it also asked the jury to allocate percentages of fault. When the question of the appropriateness of the verdict form was raised at trial, counsel for the Appellant stated as follows: "I think it's acceptable within the law and it conforms to the facts of the case." We find the Appellant's argument regarding the jury verdict form to be meritless, particularly in light of his acquiescence and failure to object to it at trial.