**STATE OF WEST VIRGINIA**

**SUPREME COURT OF APPEALS**

**DONNA J. CARTER,**
**Claimant Below, Petitioner**

**vs.)    No. 21-0129** (BOR Appeal No. 2055422)
                    (Claim No. 2020014836)

**DAVIS HEALTH SYSTEM,**
**Employer Below, Respondent**

**MEMORANDUM DECISION**

Petitioner Donna J. Carter, by Counsel J. Thomas Greene Jr. and T. Colin Greene, appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Davis Health System, by Counsel Jillian L. Moore, filed a timely response.

The issue on appeal is compensability of the claim. The claims administrator rejected the claim on January 25, 2020. On June 22, 2020, the Workers' Compensation Office of Judges ("Office of Judges") affirmed the claims administrator's decision. This appeal arises from the Board of Review's Order dated January 22, 2021, in which the Board affirmed the Order of the Office of Judges.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

The standard of review applicable to this Court's consideration of workers' compensation appeals has been set out under West Virginia Code § 23-5-15, in relevant part, as follows:

(c) In reviewing a decision of the Board of Review, the Supreme Court of Appeals shall consider the record provided by the board and give deference to the board's findings, reasoning, and conclusions . . . .

(d) If the decision of the board represents an affirmation of a prior ruling by both the commission and the Office of Judges that was entered on the same issue in the

1

same claim, the decision of the board may be reversed or modified by the Supreme Court of Appeals only if the decision is in clear violation of constitutional or statutory provision, is clearly the result of erroneous conclusions of law, or is based upon the board's material misstatement or mischaracterization of particular components of the evidentiary record. The court may not conduct a de novo reweighing of the evidentiary record . . . .

*See Hammons v. W. Va. Off. of Ins. Comm'r*, 235 W. Va. 577, 582-83, 775 S.E.2d 458, 463-64 (2015). As we previously recognized in *Justice v. West Virginia Office Insurance Commission*, 230 W. Va. 80, 83, 736 S.E.2d 80, 83 (2012), we apply a *de novo* standard of review to questions of law arising in the context of decisions issued by the Board. *See also Davies v. W. Va. Off. of Ins. Comm'r*, 227 W. Va. 330, 334, 708 S.E.2d 524, 528 (2011).

Ms. Carter alleges that she sustained a work-related injury on December 12, 2019, to the right side of her lower back while moving patients. She sought treatment at Davis Health System Emergency Department on December 13, 2019. In a Report of Occupational Injury, her physician stated that Ms. Carter injured her back due to a muscle strain from pulling and lifting. It was opined that her condition was a direct result of an occupational injury. The physician also noted that the injury aggravated a prior injury/disease. Ms. Carter attempted to return to work the following Monday. However, by Thursday, December 19, 2019, she was unable to tolerate the pain, and she was taken off work.

On January 2, 2020, Richard A. Douglas, M.D., a spine specialist at the Spine Clinic of the United Hospital Center, stated in a report that Ms. Carter was first seen as a new patient on May 23, 2019, with complaints of right S1 radiculopathy. She was provided a nerve block injection to her right L5 and right S1 on July 1, 2019, which provided months of relief prior to her work injury. Dr. Douglas also noted that Ms. Carter had undergone a previous surgical intervention in 1997. On January 2, 2020, Dr. Douglas reported that Ms. Carter's most recent symptoms began after moving patients in the operating room while at work. He recommended an MRI and indicated that there may be a need for an L5/S1 microlumbar discectomy. The MRI, which was performed on January 13, 2020, led to diagnoses of lumbosacral radiculopathy at S1, radicular leg pain, lumbar nerve root impingement, lumbar disc herniation with radiculopathy, stenosis of the lateral recess of the lumbosacral spine, and a history of lumbar surgery. Dr. Douglas determined that the MRI did show that Ms. Carter needed surgery to address her symptoms resulting from her December 12, 2019, work injury, and he performed a right L5-S1 micro-lumbar discectomy with right S1 foraminotomy on January 24, 2020.[1]

Ms. Carter sought follow-up treatment with Carl S. High, M.D., on January 3, 2020. Dr. High noted that Ms. Carter was suffering from severe back pain from a lifting injury, which he noted to be significantly worse than her prior pain which required a nerve root injection. Dr. High further noted that Ms. Carter's lumbosacral spine exhibited tenderness on palpation, muscle spasms, and that any movement caused pain. Dr. High stated that Ms. Carter was exhibiting excruciating pain, and she would need stronger medication to treat the issue.

---

[1] The surgery was performed under Ms. Carter's private health insurance.

On January 25, 2020, the claims administrator issued an Order rejecting Ms. Carter's claim and stated that "the disability complained of is not due to an injury or disease received in the course of and resulting from employment." The claims administrator further stated that medical records indicated that Ms. Carter's condition pre-existed her injury of December 12, 2019, and that the symptoms and diagnoses in the claim were the same as prior to her December 12, 2019, injury. Ms. Carter protested the claims administrator's rejection of her claim.

Ms. Carter acknowledges that she has previously suffered from back problems prior to her December 12, 2019, injury. Medical records of John Henderson, M.D., dated July 17, 2013, through April 4, 2018, indicate a consistent medical history of sciatica. The records dated October 4, 2017, through April 4, 2018, show that Ms. Carter experienced an increased level of back pain. Medical testing, including an MRI report of the lumbar spine dated August 11, 2017, revealed multilevel lumbar spine degenerative changes, most significant at L2-L3 and L5-S1.

After ending her treatment with Dr. Henderson, Ms. Carter came under the care of Dr. High from June 13, 2018, through September 24, 2019. The records demonstrate that her back pain returned and progressed, with the onset of radiation into the right lower extremity. An MRI of the lumbar spine performed on May 10, 2019, confirmed multi-level degenerative changes, most significant at L5-S1, with right paracentral disc extrusion (herniation) with severe right lateral recess stenosis and suspected impingement of the traversing right S1 nerve root. Degenerative disc disease was found at all other levels.

Ms. Carter was once again evaluated by Dr. Douglas on May 23, 2019, where she presented with lower back pain, right leg pain, and numbness of the right toes. The pain was described as aching, throbbing, shooting, stinging, and burning. Dr. Douglas listed exacerbating factors to the pain as sitting, bending, and lifting. The assessment was lumbar disc herniation, lumbosacral radiculopathy at S1, and lumbar nerve root impingement. On September 24, 2019, Ms. Carter returned to Dr. High and reported several flare ups in her low back pain.

After protesting the claims administrator's rejection of the claim by Order dated January 25, 2020, Ms. Carter argued that she sustained a discreet new injury which required surgical intervention in order for her to recover and return to work. She asserted that her claim should be held compensable for lumbosacral radiculopathy at L5-S1, radicular leg pain, lumbar nerve root impingement, and lumbar disc herniation with radiculopathy. Ms. Carter argued that both Dr. Douglas and Dr. High previously evaluated her in May of 2019, and had not recommended surgery at that time. However, upon reevaluating Ms. Carter after her work injury, Dr. High noted her increased symptoms and referred her to Dr. Douglas, who recommended surgery which was performed on January 24, 2020. Due to the injuries that Ms. Carter suffered on December 12, 2019, she argued that surgery was required to repair the damage.

An expedited hearing was held on May 11, 2020, and the Office of Judges issued a decision dated June 22, 2020, affirming the rejection of the claim. Although the Office of Judges found that the evidence establishes Ms. Carter suffered an isolated fortuitous event on December 12, 2019, while moving patients, it concluded that the event did not result in a new injury. It was noted that

3

the reports of Dr. High dated June 13, 2018, through September 24, 2019, revealed lumbosacral tenderness upon palpation, lumbosacral pain with motion, positive straight-leg raising on the right, and an antalgic gait. The Office of Judges further stated that Ms. Carter's physical examinations after December 12, 2019, revealed lumbar tenderness upon palpation as per the records of Davis Medical Center. Dr. Douglas's examination on January 2, 2020, revealed a straight-leg raising issue on the right and an antalgic gait. Also, Dr. High's examination of January 3, 2020, revealed lumbosacral tenderness upon palpation and lumbosacral pain with motion. The Office of Judges concluded that Ms. Carter's physical examinations were similar before and after the December 12, 2019, work incident. The Office of Judges also determined that Ms. Carter fails to identify any new symptom or complaint that was not reported prior to December 12, 2019.

In order for a claim to be held compensable under the Workers' Compensation Act, three elements must coexist: (1) A personal injury, (2) received in the course of employment, and (3) resulting from that employment. *Jordan v. State Workmen's Comp. Comm'r*, 156 W.Va. 159, 191 S.E.2d 497, 500 (1972). In determining whether an injury resulted from a claimant's employment, a causal connection between the injury and employment must be shown to have existed. *Emmel v. State Comp. Director*, 150 W.Va. 277, 145 S.E.2d 29 (1965). In syllabus point 3 of *Gill v. City of Charleston*, 236 W. Va. 737, 783 S.E.2d 857 (2016), this Court created a general rule that:

> [a] noncompensable preexisting injury may not be added as a compensable component of a claim for workers' compensation medical benefits merely because it may have been aggravated by a compensable injury. To the extent that the aggravation of a noncompensable preexisting injury results in a [discrete] new injury, that new injury may be found compensable.

Syllabus Point 5 of *Moore v. ICG Tygart Valley, LLC*, No. 20-0028, ___ W. Va. ___, 899 S.E.2d at 781 (W. Va. 2022) states:

> A claimant's disability will be presumed to have resulted from the compensable injury if: (1) before the injury, the claimant's preexisting disease or condition was asymptomatic, and (2) following the injury, the symptoms of the disabling disease or condition appeared and continuously manifested themselves afterwards. There still must be sufficient medical evidence to show a causal relationship between the compensable injury and the disability, or the nature of the accident, combined with the other facts of the case, raises a natural inference of causation. This presumption is not conclusive; it may be rebutted by the employer.

The Office of Judges thoroughly considered the evidence of record, which included extensive evidence of Ms. Carter's medical treatment both prior to and following the alleged injury of December 12, 2019. Although Ms. Carter describes an injury resulting from an isolated and fortuitous event, the Office of Judges found that there is no evidence to establish that she suffered a discreet new injury, as required by *Gill*. The medical evidence demonstrates that the requested diagnoses were not only diagnosed prior to December 12, 2019, but they were actively symptomatic and required treatment.

4

While Ms. Carter may have sustained an exacerbation of her longstanding low back condition, the Office of Judges did not err in finding that there was no discreet new injury to result in a compensable claim. Accordingly, we find that the January 22, 2021, Order of the Board of Review should be affirmed.

Affirmed.

**ISSUED: January 19, 2023**

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice C. Haley Bunn

**DISSENTING:**

Justice William R. Wooton would set the case for Rule 20 oral argument.

WOOTON, Justice, dissenting:

I respectfully dissent from the Court's resolution of this appeal because I believe that this case presents us with an opportunity to correct a structural fault in our workers' compensation review procedures: an age-related bias against workers such as the petitioner, who are far more likely to have degenerative musculoskeletal conditions after a lifetime of physical labor. Subsequent work-related musculoskeletal injuries are then presumed to be nothing more than an aggravation/exacerbation of the pre-existing conditions, meaning that they are not "new" injuries under the *Gill*[2] test and the worker is not entitled to compensation.

This Court took the first step toward remedying this problem in *Moore v. ICG Tygart Valley, LLC*, _ W. Va. at _ , 879 S.E.2d 779 (W. Va. 2022), where we held that

> A claimant's disability will be presumed to have resulted from the compensable injury if: (1) before the injury, the claimant's preexisting disease or condition was *asymptomatic*, *and* (2) following the injury, the symptoms of the disabling disease or condition appeared and continuously manifested themselves afterwards. There still must be sufficient medical evidence to show a causal relationship between the compensable injury and the disability, or the nature of the accident, combined with the other facts of the case, raises a natural inference of causation. This

---

[2] *Gill v. City of Charleston*, 236 W. Va. 737, 783 S.E.2d 857 (2016).

presumption is not conclusive; it may be rebutted by the employer.

*Moore*, _W. Va. at _, 899 S.E.2d at 781, Syl. Pt. 5, in part (emphasis added). In my view, this majority in this case has missed an opportunity to take the next – and critical – step, by extending the holding in *Moore* to cases where (1) before the injury, the claimant's preexisting disease or condition was symptomatic, but (2) following the injury, different symptoms of the disabling disease or condition appeared and required treatment modalities different from those that had previously been effective.

I begin with what this Court has described as a polar star principle that should guide our resolution of every issue arising in a workers' compensation case: that "'[t]he Workmen's Compensation Law is remedial in its nature, and must be given a liberal construction to accomplish the purpose intended.'" *Repass v. Workers' Comp. Div.*, 212 W. Va. 86, 92, 569 S.E.2d 162, 168 (2002) (citation omitted). With this principle in mind, let us review the salient facts of this case. It is undisputed that at the time of her work-related injury on December 12, 2019, Ms. Carter, a surgical tech nurse, had a history of degenerative disc disease and multi-level degenerative changes at L5-S1, with right paracentral disc herniation, severe right lateral recess stenosis, and suspected impingement of the traversing right S1 nerve root. Having undergone a partial discectomy in 1997, Ms. Carter was thereafter treated conservatively with pain medication and nerve root injection. Significantly, for the next twenty-two years – right up until the day she was required to move two 200-pound patients, resulting in an exacerbation of her right S1 radiculopathy – she had been able to perform her job duties on a regular basis with no limitations or restrictions.

However, conservative treatment, which had previously been sufficient to enable Ms. Carter to do her job, failed to ameliorate the debilitating pain she suffered after the exacerbation of her pre-existing back issues resulting from the work-related injury. One treating physician, Dr. High, noted in his medical report that Ms. Carter was suffering from severe back pain from a lifting injury and that this pain was "significantly worse than had been associated with previous treatment[.]" Accordingly, a second treating physician, Dr. Douglas, determined based on MRI results that Ms. Carter needed surgery to address her "significantly worse" symptoms; on January 24, 2020, he performed a right L5-S1 microlumbar discectomy with right S1 foraminotomy.

From these facts and circumstances it is readily apparent that Ms. Carter is an "eggshell plaintiff," a concept well-established in this Court's jurisprudence. *See Smith v. Clark*, 241 W. Va. 838, 851, 828 S.E.2d 900, 913 (2019) ("if you find that [the injured party] was more susceptible to injury than a normal person, you may still award damages to [him] for the injuries caused by the Defendants even if a normal healthy person would not have suffered similar injury.") (footnote omitted); *see also Shia v. Chvasta,* 180 W.Va. 510, 377 S.E.2d 644 (1988), where this Court described the eggshell plaintiff rule as "an accurate statement of the law," but rejected plaintiff/petitioner's claim that the circuit court erred in refusing to give an eggshell instruction because the eggshell doctrine, being a "straightforward issue of proximate cause[,]" was irrelevant in light of the particular defense offered at trial. *Shia,* 180 W.Va. at 514, 377 S.E.2d at 648.

Prior to the Legislature's wholesale revision of workers' compensation law in 1995, W. Va. Code §§ 23-1-1 to -6-3, it was clearly established that

6

> The fact that an employee, injured in performing services arising out
> of and incidental to his employment, was already afflicted with a
> progressive disease that might some day have produced physical
> disability, is no reason why the employee should not be allowed
> compensation, under Workmen's Compensation Act, for the injury
> which, added to the disease, superinduced physical disability.

*Charlton v. State Workers Compensation Commissioner,* 160 W. Va. 664, 667, 236 S.E.2d 241, 243 (1977). Further, "[a] diseased workman who in the course of and resulting from his employment receives an injury, which aggravates or accelerates the disease, to the extent of causing a disability sooner than would otherwise have occurred, is entitled to compensation from Workmen's Compensation Fund." *Id.* (quoting Syl. Pt. 3, *Manning v. State Compensation Commissioner,* 124 W.Va. 620, 22 S.E.2d 299 (1942).

Two decades after its decision in *Repass*, this Court appears to have sounded a wholesale retreat from the Rule of Liberality articulated in that case. *Repass*, 212 W. Va. at 92-93, 569 S.E.2d at 168-69. In the instant case, the Claims Administrator rejected Ms. Carter's claim on the ground that the disability of which she complained was not due to "an injury or disease received in the course of and resulting from employment," and that the disability, if any, resulted from a preexisting condition. The Office of Judges reversed the former finding, concluding that there was "an isolated fortuitous event . . . while moving patients," but affirmed the latter finding on the ground that the disability was not a "new" injury but rather an aggravation/exacerbation of a preexisting condition. The Board of Review affirmed. Today, a majority of this Court affirms the Board, treating our decision in *Moore* as a narrow exception to what has become a Rule of Illiberality rather than as a first step toward the goal of remedying a systemic injustice to the most vulnerable members of our work force: older workers such as Ms. Carter, who are far more likely to have degenerative musculoskeletal changes after a lifetime of labor involving physical exertion.

Fully recognizing that "workers' compensation is not the equivalent of a welfare system[,]" *Repass*, 212 W. Va. at 93, 569 S.E.2d at 169, I believe that the pendulum has swung so far in the other direction that older claimants are being punished, not rewarded, for a lifetime of hard work. The evidence in Ms. Carter's case shows that the work-related injury she suffered on December 12, 2019, exacerbated her preexisting back symptoms and that the intractable pain resulting from that injury required the drastically different treatment modality of surgery.[3]

The result in this case is manifestly unfair to Ms. Carter and evidences a discriminatory, age-related bias that has taken firm root in the workers' compensation system. I would put this case on the Court's Rule 20 docket for argument on the issue left unaddressed in *Moore*: whether a work-related injury that exacerbates the symptoms of a preexisting condition and requires different treatment modalities is a "new" injury under *Gill*.

For all of the reasons set forth in this separate opinion, I respectfully dissent.

[3] The existence of the 1997 surgery does not establish that pre- and post-injury treatments were "the same"; twenty-two years of successful conservative treatment prior to Ms. Carter's work-related injury would seem to conclusively refute any such finding.